**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

CITIZENS FOR RESPONSIBILITY )
AND ETHICS IN WASHINGTON, )
 )
    Plaintiff, )
 )
        v. )    Civil Action No. 25-cv-1051
 )
OFFICE OF MANAGEMENT AND )
BUDGET, et al., )
 )
    Defendants. )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND PARTIAL SUMMARY JUDGMENT

Wendy Liu (DC Bar No. 1600942)
Adina H. Rosenbaum (DC Bar No. 490928)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
wliu@citizen.org

Nikhel S. Sus (DC Bar No. 1017937)
Yoseph T. Desta (DC Bar No. 90002042)*
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
Phone: (202) 408-5565
Fax: (202) 508-5020
nsus@citizensforethics.org
ydesta@citizensforethics.org

*admitted _pro hac vice_

_Counsel for Plaintiff_

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    Apportionment of Appropriated Funds ........................................................................... 2

    The 2022 Act and 2023 Act ............................................................................................ 4

    The Public Apportionments Database.............................................................................. 6

    Defendants' Removal of the Public Apportionments Database ....................................... 8

    This Lawsuit ................................................................................................................... 10

LEGAL STANDARD......................................................................................................... 11

ARGUMENT ...................................................................................................................... 12

I.    CREW is likely to succeed on the merits. ................................................................ 12

        A.    CREW is likely to succeed on its APA claim that Defendants' action violated the 2023 Act..................................................................................................... 12

        B.    CREW is likely to succeed on its APA claim that Defendants' action violated the Paperwork Reduction Act. ...................................................................... 16

            1.    Defendants violated the Paperwork Reduction Act's requirement to provide timely and equitable access to public information........................................... 16

            2.    Defendants failed to observe procedures required by the Paperwork Reduction Act. ............................................................................................... 17

II.    CREW will suffer irreparable harm absent a preliminary injunction. ................... 18

III.    The balance of the equities and the public interest favor CREW. ....................... 21

IV.    Partial summary judgment is appropriate at this time. ......................................... 25

CONCLUSION................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Bioscience, Inc. v. Thompson*,
   269 F.3d 1077 (D.C. Cir. 2001)................................................................................. 12

*American Immigration Council v. U.S. Department of Homeland Security*,
   470 F. Supp. 3d 32 (D.D.C. 2020)............................................................................ 11

*American Oversight v. Department of State*,
   414 F. Supp. 3d 182 (D.D.C. 2019).......................................................................... 19

*Ashtari v. Pompeo*,
   496 F. Supp. 3d 462 (D.D.C. 2020).......................................................................... 12

*Citizens for Responsibility & Ethics in Washington v. U.S. DOGE Service*,
   2025 WL 752367 (D.D.C. Mar. 10, 2025) ................................................. 19, 20, 21

*City of New Haven v. United States*,
   634 F. Supp. 1449 (D.D.C. 1986)............................................................................. 25

*Center for Public Integrity v. Department of Defense*,
   411 F. Supp. 3d 5 (D.D.C. 2019).......................................................................... 19, 21

*Doctors for America v. Office of Personnel Management*,
   --- F. Supp. 3d ---, 2025 WL 452707 (D.D.C. Feb. 11, 2025) ................................. 18

*Grundmann v. Trump*,
   2025 WL 782665 (D.D.C. Mar. 12, 2025) ................................................................ 25

*Hedgeye Risk Management, LLC v. Heldman*,
   196 F. Supp. 3d 40 (D.D.C. 2016)............................................................................ 25

*Hoai v. Superior Court*,
   473 F. Supp. 2d 75 (D.D.C. 2007)............................................................................ 25

*League of Women Voters of U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016)...................................................................................... 19

*National Ass'n for Fixed Annuities v. Perez*,
   217 F. Supp. 3d 1 (D.D.C. 2016).............................................................................. 25

*Nken v. Holder*,
   556 U.S. 418 (2009) .................................................................................................. 11

*Nat'l Treasury Emps. Union v. Vought*,
--- F. Supp. 3d ---, 2025 WL 942772 (D.D.C. Mar. 28, 2025) .................................. 18

*National Labor Relations Board v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ........................................................................................ 14

*Open Communities Alliance v. Carson*,
286 F. Supp. 3d 148 (D.D.C. 2017) ................................................................ 22

*Payne Enterprises v. United States*,
837 F.2d 486 (D.C. Cir. 1988) ........................................................................ 19

*\*Protect Democracy Project, Inc. v. U.S. Department of Defense*,
263 F. Supp. 3d 293 (D.D.C. 2017) ................................................................ 19

*Rigdon v. Perry*,
962 F. Supp. 150 (D.D.C. 1997) ..................................................................... 25

*Sai v. TSA*,
54 F. Supp. 3d 5 (D.D.C. 2014) ...................................................................... 18

*Salazar v. Ramah Navajo Chapter*,
567 U.S. 182 (2012) .......................................................................................... 3

*Singh v. Berger*,
56 F.4th 88 (D.C. Cir. 2022) ........................................................................... 11

*U.S. Department of Justice v. Julian*,
486 U.S. 1 (1988) ............................................................................................ 13

*U.S. Department of Navy v. Federal Labor Relations Authority*,
665 F.3d 1339 (D.C. Cir. 2012) ........................................................................ 3

*U.S. Fish & Wildlife Service v. Sierra Club, Inc.*,
592 U.S. 261 (2021) ........................................................................................ 14

*United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union v. Federal Highway Administration*,
151 F. Supp. 3d 76 (D.D.C. 2015) .................................................................. 17

**Constitution and Statutes**

U.S. Const. art. I, § 9, cl. 7 .................................................................................... 2

*Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, div. E, tit. II, 136 Stat. 49
(Mar. 15, 2022) (codified at 31 U.S.C. § 1513 note)................................... 1, 5, 6, 13, 15, 17, 21

*Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, div. E, tit. II, 136 Stat. 4459
(Dec. 29, 2022) (codified at 31 U.S.C. § 1513 note)..................................... 1, 6, 12, 15, 17, 21

2 U.S.C. § 683 ............................................................................................................ 3

2 U.S.C. § 686 ............................................................................................................ 24

2 U.S.C. § 687 ............................................................................................................ 24

5 U.S.C. § 706 ............................................................................................................ 12

28 U.S.C. § 1657 ........................................................................................................ 25

31 U.S.C. § 712 .......................................................................................................... 24

31 U.S.C. § 1341 ........................................................................................................ 3

31 U.S.C. § 1351 ........................................................................................................ 24

*31 U.S.C. § 1512 ...................................................................................................... 3

*31 U.S.C. § 1513 ...................................................................................................... 3

*31 U.S.C. § 1517 ...................................................................................................... 3, 14, 24

*31 U.S.C. § 1518 ...................................................................................................... 4, 14

*31 U.S.C. § 1519 ...................................................................................................... 4, 14

31 U.S.C. § 3529 ........................................................................................................ 24

44 U.S.C. § 3501 ........................................................................................................ 16

44 U.S.C. § 3502 ........................................................................................................ 6, 16

*44 U.S.C. § 3506 ...................................................................................................... 16, 17, 18

**Rules**

Fed. R. Civ. P. 56 ...................................................................................................... 11

Fed. R. Civ. P. 65 ...................................................................................................... 25

## Other Authorities

Avi Asher-Schapiro, Andy Kroll & Christopher Bing, *DOGE's Millions: As Musk and Trump Gut Government, Their Ax-Cutting Agency Gets Cash Infusion*, ProPublica (Feb. 20, 2025) ................................................................................. 23

Eloise Pasachoff, *The President's Budget as a Source of Agency Policy Control*, 125 Yale L.J. 2182 (2016) ........................................................................... 4

Eloise Pasachoff, *Modernizing the Power of the Purse Statutes*, 92 Geo. Wash. L. Rev. 359 (2024) ............................................................... 4, 5

*Ensuring Accountability for All Agencies*, Exec. Order No. 14,215, 90 Fed. Reg. 10447 (Feb. 18, 2025) .................... 22

Exec. Order No. 6,166 (June 10, 1933), *as amended by* Exec. Order No. 12,608, 52 Fed. Reg. 34617 (Sept. 9, 1987) ........................... 4

James Madison, The Federalist No. 51 (Clinton Rossiter ed., 1961) ............. 3

Letter, *Coalition Urges Reinstatement of the Office of Management and Budget Public Apportionment Tracker* (Apr. 7, 2025) .............................................. 15, 24

Letter from Russell Vought to Sen. Patty Murray (Mar. 29, 2025) .................... 9, 12, 14

Letter from Steny H. Hoyer, Ranking Member, Subcommittee on Financial Services and General Government, House Appropriations Committee, et al., to David Joyce, Chairman, Subcommittee on Financial Services and General Government, House Appropriations Committee (Mar. 24, 2025) .................................................................. 23

*Office of Management and Budget, Circular No. A-11 (July 2024), https://www.whitehouse.gov/wp-content/uploads/2018/06/a11.pdf ........................... 3, 4, 7, 13

Office of Management and Budget, Circular No. A-130 Revised (July 28, 2016), 2016 WL 7664619 ................................................................................. 18

*Organization of Executive Agencies*, Exec. Order No. 6,166 (June 10, 1933), *as amended by Elimination of Unnecessary Executive Orders and Technical Amendments to Others*, Exec. Order No. 12,608, 52 Fed. Reg. 34617 (Sept. 9, 1987) .................... 4

Paul M. Krawzak, *White House scraps public spending database*, Roll Call (Mar. 24, 2025) ................................................................................. 8

Peter Cohn, *White House opens funding spigot for DOGE expenses*, Roll Call (Feb. 4, 2025) ................................................................................. 23

Press Release, *Boyle Demands White House Comply with the Law, Restore Public Access to Budget Data* (Mar. 24, 2025) ................................................................ 9, 24

Press Release, Rep. Rosa DeLauro, *DeLauro Edits Vought's Letter: "Fixed it for you."* (Apr. 2, 2025). ................................................................................................ 9, 10

Press Release, Rep. Rosa DeLauro & Sen. Patty Murray, *What Are They Hiding? DeLauro, Murray Demand OMB Promptly Restore Access to Website Detailing Federal Spending Allocations, As Federal Law Requires* (Mar. 24, 2025) ................... 9, 14, 24

*Protecting the American People Against Invasion*, Exec. Order No. 14,159, 90 Fed. Reg. 8443 (Jan. 20, 2025) .................................................................................................... 23

*Reevaluating and Realigning United States Foreign Aid*, Exec. Order No. 14,169, 90 Fed. Reg. 8619 (Jan. 20, 2025) ................................... 23

Reuters, *Trump's two asks from California: voter ID laws and water flow* (Jan. 24, 2025) ........ 23

U.S. Government Accountability Office, *About* ............................................................ 24

U.S. Government Accountability Office, Decision, File No. B-331564, *Office of Management and Budget—Withholding of Ukraine Security Assistance* (Jan. 16, 2020) ............................... 5

U.S. Government Accountability Office, Letter from Edda Emmanuelli Perez, General Counsel, to Russell T. Vought, Director, Office of Management and Budget (Apr. 8, 2025). .... 10, 14, 24

Wright & Miller, 23A Fed. Prac. & Proc. Evid. § 5437 (1st ed.) ................................ 13

Zusha Elinson, *Trump Wanted an Apology. He Got Maine's No-Nonsense Governor Instead*, Wall Street Journal (Mar. 30, 2025) .......................................................................... 23

## INTRODUCTION

Defendant Office of Management and Budget (OMB) is required by law to post, on a publicly accessible website, a database with documents reflecting OMB's "apportionments"—that is, each legally binding, OMB-approved plan for an agency's use of congressionally appropriated funds. *See* 31 U.S.C. § 1513 note. Congress first enacted this requirement in the Consolidated Appropriations Act, 2022 (2022 Act). The following year, in the Consolidated Appropriations Act, 2023 (2023 Act), Congress made the disclosure requirement permanent, imposing on OMB an ongoing obligation to publicly post this information no later than two business days after approval of an apportionment.

As required by the 2022 Act, in July 2022, OMB began to timely post to a public database, referred to here as the Public Apportionments Database, the apportionment information that Congress required it to share with the public. OMB continued to maintain and operate that database, as required by law, until March 24, 2025. At that time, Defendants OMB and OMB Director Russell Vought removed, without notice or explanation, the Public Apportionments Database and the information within it. Since then, Defendants have stated that OMB will no longer publicly post apportionment information and will not operate and maintain a public database containing that information.

Because Defendants' removal of the database is plainly unlawful, plaintiff Citizens for Responsibility and Ethics in Washington (CREW), a non-partisan, non-profit government watchdog organization, is likely to succeed on the merits of its Administrative Procedure Act (APA) claims that Defendants' action is contrary to the 2023 Act and the Paperwork Reduction

Act.[1] In addition, CREW is suffering and will continue to suffer irreparable harm from the denial of timely access to the apportionment information because, without it, CREW cannot carry out its work to monitor and analyze this information for potential abuses of federal spending and timely disseminate those findings to the public. Moreover, there is significant public interest in restoring immediate access to the apportionment information that was unlawfully removed, and Defendants will suffer no cognizable harm if required to restore the Public Apportionments Database. The balance of the equities and the public interest thus decisively weigh in CREW's favor. The Court therefore should issue a preliminary injunction requiring Defendants to restore the Public Apportionments Database and the apportionment information they unlawfully removed.

In addition, because the merits of CREW's claims that Defendants' actions are contrary to law are clear, this Court should, without delay, enter a final order granting partial summary judgment on those claims without delay and (i) ordering Defendants to restore the Public Apportionments Database and make publicly available the apportionment information required to be disclosed by the 2022 and 2023 Acts, and (ii) permanently enjoining Defendants from removing that database and the apportionment information required to be disclosed by the 2022 and 2023 Acts from a publicly accessible website without statutory authorization.

## BACKGROUND

### Apportionment of Appropriated Funds

The Constitution vests in Congress the exclusive power to appropriate funds. *See* U.S. Const. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury but in Consequence of Appropriations made by Law."). Congress's "'exclusive power over the purse' … was one of the

---

[1] CREW is also likely to succeed on the merits of its APA claim that Defendants' action is arbitrary and capricious. Because the administrative record, however, has not yet been produced, CREW is not addressing that claim in this motion.

most important authorities allocated to Congress in the Constitution's 'necessary partition of power among the several departments.'" *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.,* 665 F.3d 1339, 1346 (D.C. Cir. 2012) (second quotation, quoting The Federalist No. 51, at 320 (James Madison) (Clinton Rossiter ed., 1961)). In furtherance of this power, Congress enacted the Impoundment Control Act, which provides that congressionally appropriated funds "shall be made available for obligation," 2 U.S.C. § 683, and permits the President to defer or propose rescission of funds only in limited circumstances and if specified conditions are met, *see id.* §§ 681–88.

Also reflecting Congress's power of the purse, the Anti-Deficiency Act "prevents federal officers from 'mak[ing] or authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation.'" *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 197 (2012) (quoting 31 U.S.C. § 1341(a)(1)(A)). Under that law, once Congress appropriates funds, the funds must be "apportioned"—that is, allocated according to a budgetary decision about how much money to allow an agency to spend in a given time period and for what purpose.

Specifically, the Anti-Deficiency Act provides that "[t]he President shall apportion in writing" the appropriations available to executive agencies, 31 U.S.C. § 1513(b)(1), to prevent agencies from spending more than Congress has provided or from spending funds too quickly or, for certain types of funds, ineffectively, *id.* § 1512(a). Appropriated funds are apportioned by "time period[]" or "activities, functions, projects, or objects," or a combination of both. *Id.* § 1512(b)(1). An apportionment is a "legally binding" budget decision. OMB, Circular No. A-11, *Preparation, Submission, and Execution of the Budget* (OMB Circular No. A-11), § 120.1 (2024).[2] Federal officials "may not make or authorize an expenditure or obligation exceeding … an apportionment," 31 U.S.C. § 1517(a)(1), and federal officials responsible for exceeding an

_____

[2] https://www.whitehouse.gov/wp-content/uploads/2018/06/a11.pdf.

3

apportionment "shall be" subject to administrative discipline and may be subject to criminal penalties, *id.* §§ 1518–19.

The President, by executive order, delegated this apportionment authority to OMB. *See* Exec. Order No. 6,166 (June 10, 1933), *as amended by* Exec. Order No. 12,608, 52 Fed. Reg. 34617 (Sept. 9, 1987). Through apportionments, OMB "formally controls agency spending." Eloise Pasachoff, *The President's Budget as a Source of Agency Policy Control*, 125 Yale L.J. 2182, 2229 (2016). OMB "sometimes uses apportionment to impose conditions on agency spending or to demand changes in agency practices." *Id.* (citation omitted).

OMB also may attach "footnotes" to apportionments that "become part of the apportionment" or direct agencies to take certain actions with respect to the appropriated funds. OMB Circular No. A-11 § 120.36; *see id.* § 120.34. "For example, an apportionment footnote might condition the availability of funds on some subsequent OMB action, such as approving an agency's 'spend plan'; detail policy goals that should be achieved in a spend plan; or preclude an agency from obligating funds that were previously available to the agency to use." Eloise Pasachoff, *Modernizing the Power of the Purse Statutes*, 92 Geo. Wash. L. Rev. 359, 370 (2024). As OMB has explained, footnotes for apportioned amounts are part of the apportionment decision, "have legal effect," and are subject to the Anti-Deficiency Act. OMB Circular A-11 § 120.34.

**The 2022 Act and 2023 Act**

Prior to 2022, there was a troubling "lack of transparency" around OMB's apportionments and "no easy way for Congress or the public to see what OMB's directions were." Pasachoff, *Modernizing the Power of the Purse Statutes*, *supra*, at 371–72. Because of this "[a]pportionment secrecy," Congress and the public generally had to rely either on whistleblowers or an agency's noncompliance with an apportionment to reveal an abuse of the apportionment process, "thus

imped[ing] both Congress's ability to control the power of the purse and the public's ability to hold the executive branch accountable for its spending." *Id.* For example, in 2019, following a whistleblower complaint, the Government Accountability Office (GAO) found that OMB had unlawfully withheld, through a series of apportionments, approximately $214 million that Congress had appropriated to the Department of Defense for U.S. security assistance to Ukraine. *See* U.S. Gov't Accountability Off., Decision, File No. B-331564, *Office of Management and Budget—Withholding of Ukraine Security Assistance* (Jan. 16, 2020);[3] *see* Pasachoff, *Modernizing the Power of the Purse Statutes*, *supra*, at 372 n.84. Without the whistleblower, the unlawful withholding may have never been discovered by Congress or the public. *See* Pasachoff, *Modernizing the Power of the Purse Statutes*, *supra*, at 372 & n.84.

In 2022, Congress imposed transparency requirements on OMB's apportionment of appropriated funds. The 2022 Act required OMB to post on a publicly accessible website a database with OMB's documents and associated footnotes apportioning appropriated funds. Specifically, the statute required OMB to "implement[] … an automated system to post each document apportioning an appropriation … including any associated footnotes … not later than 2 business days after the date of approval of such apportionment" and to "place on such website each document apportioning an appropriation … including any associated footnotes[] already approved [for] the current fiscal year." Pub. L. No. 117-103, div. E, tit. II, § 204(b), 136 Stat. 49, 257 (Mar. 15, 2022) (codified at 31 U.S.C. § 1513 note). Congress further required that "[e]ach document apportioning an appropriation … that is posted on a publicly accessible website pursuant to such section shall also include a written explanation by the official approving each such apportionment stating the rationale for any footnotes for apportioned amounts." *Id.* § 204(c). In addition, the 2022

---

[3] https://www.gao.gov/assets/b-331564.pdf.

Act required that documents apportioning an appropriation be posted "in a format that qualifies each such document as an Open Government Data Asset (as defined in [44 U.S.C. § 3502])." *Id.* § 204(b).

The following fiscal year, Congress made the public disclosure requirements in the 2022 Act permanent. The 2023 Act requires that "[i]n fiscal year 2023 and *each fiscal year thereafter*," OMB "*shall* operate and maintain the automated system required to be implemented" by the 2022 Act and "*shall* continue to post each document apportioning an appropriation … including any associated footnotes" within two business days after the apportionment's approval. Pub. L. No. 117-328, div. E, tit. II, § 204(1), 136 Stat. 4459, 4667 (Dec. 29, 2022) (codified at 31 U.S.C. § 1513 note) (emphases added). The 2023 Act further provided that, for each document posted on the publicly accessible website, the requirement of posting a written explanation of the rationale for footnotes for apportioned amounts "*shall* continue to apply." *Id.* § 204(2) (emphasis added). Like the 2022 Act, the 2023 Act required that the documents apportioning an appropriation be posted "in a format that qualifies each such document as an open Government data asset (as that term is defined in [44 U.S.C. § 3502])." *Id.* § 204(1).

**The Public Apportionments Database**

In July 2022, OMB implemented the disclosure requirements of the 2022 Act by posting an apportionment database, referred to herein as the Public Apportionments Database, at https://apportionment-public.max.gov/, a publicly accessible website. The Public Apportionments Database contained, for fiscal year 2022, all documents apportioning an appropriation, including associated footnotes, and written explanations for footnotes for apportioned amounts. *See* Approved Apportionments, Public Apportionments Database (as of July 14, 2022).[4] In addition,

---

[4] https://web.archive.org/web/20220714005315/https://apportionment-public.max.gov/.

as required by the 2022 Act, the apportionment documents were "posted to [the website] two days after approval by OMB." *Id.*

From July 2022 until about March 24, 2025, OMB continued to maintain and operate the Public Apportionments Database, as required by the 2022 Act and 2023 Act. *See* OMB Circular No. A-11 § 120.4 (stating that "OMB is required to post all approved apportionment documents on a public website," and that "[t]hose apportionments can be found here: https://apportionment-public.max.gov/"). During that time, OMB posted to the Public Apportionments Database apportionments, including associated footnotes and written explanations, within two business days of the approval date of the apportionment, making that information publicly accessible. *See id.*; *see also* Approved Apportionments, Public Apportionments Database (as of March 21, 2025).[5] For example, as of March 21, 2025, the Public Apportionments Database included apportionments, including footnotes and written explanations, for fiscal years 2022, 2023, 2024, and 2025, as depicted below:

---

[5] https://web.archive.org/web/20250321155515/https://apportionment-public.max.gov/.

*Id.* Each folder designating a fiscal year contained subfolders, categorized by agency, with publicly accessible apportionment information. *Id.*[6]

**Defendants' Removal of the Public Apportionments Database**

As of March 24, 2025, Defendants OMB and Director Vought removed the Public Apportionments Database from the website. *See* Paul M. Krawzak, *White House scraps public spending database*, Roll Call (Mar. 24, 2025); *see also* Wentworth Decl. ¶ 23. The website that had housed the Public Apportionments Database has been replaced with a "Page Not Found" message. *See* MAX Homepage, https://apportionment-public.max.gov/; *see also* Wentworth Decl. ¶¶ 23, 25. Defendants provided no notice or explanation prior to removal of the Public Apportionments Database. *See* Wentworth Decl. ¶ 24. The Public Apportionments Database and

---

[6]        *E.g.*,        https://web.archive.org/web/20250314210446/https://apportionment-public.max.gov/Fiscal%20Year%202025/Department%20of%20Agriculture/PDF/FY2025_Department%20of%20Agriculture_12.19.2024.pdf (December 19, 2024, apportionment document for USDA, which was available in the subfolder for Fiscal Year 2025).

the information within it, as well as information about any apportionments subsequently approved by OMB, are no longer publicly available on any government website. *Id.* ¶ 26; *see id.* ¶ 9.

On March 24, 2025, senior Members of the House and Senate Appropriations Committees and the House Budget Committee issued statements demanding that OMB immediately restore access to the Public Apportionments Database. *See* Press Release, Rep. Rosa DeLauro & Sen. Patty Murray, *What Are They Hiding? DeLauro, Murray Demand OMB Promptly Restore Access to Website Detailing Federal Spending Allocations, As Federal Law Requires* (Mar. 24, 2025) (DeLauro & Murray Statement);[7] Press Release, *Boyle Demands White House Comply with the Law, Restore Public Access to Budget Data* (Mar. 24, 2025) (Boyle Statement).[8] In their statements, the Congressmembers stated that removing the Public Apportionments Database was illegal and harmed government transparency and accountability by "hid[ing] this administration's spending from the American people and from Congress." DeLauro & Murray Statement; *see* Boyle Statement.

Approximately five days after removing the Public Apportionments Database, Defendants stated by letter that OMB "will no longer operate and maintain the publicly available system to which apportionments are posted envisioned in section 204 of division E of the Consolidated Appropriations Act, 2023." Letter from Russell Vought to Sen. Patty Murray (Mar. 29, 2025) (OMB Letter);[9] *see also* Press Release, Rep. Rosa DeLauro, *DeLauro Edits Vought's Letter: "Fixed it for you."* (Apr. 2, 2025). The letter further stated:

---

[7]    https://democrats-appropriations.house.gov/news/press-releases/what-are-they-hiding-delauro-murray-demand-omb-promptly-restore-access-website.

[8]    https://democrats-budget.house.gov/news/press-releases/boyle-demands-white-house-comply-law-restore-public-access-budget-data.

[9] https://x.com/PattyMurray/status/1906821477959074083/photo/1.

OMB has determined that it can no longer operate and maintain this system because it requires the disclosure of sensitive, predecisional, and deliberative information. By their nature, apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change.

Such disclosures have a chilling effect on the deliberations within the Executive Branch. Indeed, these disclosure provisions have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending. Moreover, apportionments may contain sensitive information, the automatic public disclosure of which may pose a danger to national security and foreign policy.

*Id.*

On April 8, 2025, GAO stated in a letter to Defendants that their removal of the Public Apportionments Database is "very concerning because of the potential implications for review of such records for federal audits, congressional oversight, specifically with regard to Congress's power of the purse," and that it was "essential that [GAO] retain access to th[e] apportionment data" in the database. *See* GAO, Letter from Edda Emmanuelli Perez, Gen. Couns., to Russell T. Vought, Dir., OMB (Apr. 8, 2025) (GAO Letter).[10] GAO further stated that it "disagree[d]" with the assertions that Defendants had made in the OMB Letter. *Id.*; *see also* Press Release, Rep. Rosa DeLauro, *supra* (stating that the OMB Letter was "filled with misrepresentations and inaccuracies" and including a mark-up of the letter).[11]

**This Lawsuit**

Plaintiff CREW, a non-partisan, non-profit government watchdog organization based in Washington, D.C., is committed to monitoring and informing the public about key government

---

[10]  https://www.budget.senate.gov/imo/media/doc/gao_letter_to_omb_on_apportionments 4.pdf.

[11]  https://democrats-appropriations.house.gov/news/press-releases/delauro-edits-voughts-letter-fixed-it-you.

activities, including the Executive Branch's use of appropriated funds; protecting the rights of citizens to be informed about the activities of government officials and agencies; and ensuring transparency, ethics, and integrity in government. *See* Wentworth Decl. ¶¶ 4–5. Monitoring the Executive Branch's spending of congressionally appropriated funds is a focus of CREW's work. *See id.* ¶¶ 6, 14. To accomplish that work, CREW routinely relies on the Public Apportionments Database and information within it. *Id.* ¶ 6. For example, CREW uses the information to identify the potential misuse of public money, to request federal records based on information gathered from apportionment data, to disseminate its findings on government operations and funding to the public, to conduct advocacy on potential abuses of federal spending power, and to advance arguments implicating federal government spending in court filings. *Id.* ¶¶ 9–10, 12, 14–16, 18–22, 27.

## LEGAL STANDARD

To warrant preliminary injunctive relief, the moving party must show that "(1) it has a likelihood of success on the merits, (2) the balance of equities favors preliminary relief, (3) an injunction is in the public interest, and (4) it will likely suffer irreparable harm before the district court can resolve the merits of the case." *Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022). "Where the federal government is the opposing party, the balance of equities and public interest factors merge." *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 36 (D.D.C. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Federal Rule of Civil Procedure 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In APA cases, however, "the summary judgment standard functions slightly differently, because the reviewing court generally ... reviews

the agency's decision as an appellate court addressing issues of law." *Ashtari v. Pompeo*, 496 F. Supp. 3d 462, 467 (D.D.C. 2020) (citation omitted). "[T]he district judge sits as an appellate tribunal[] [and] [t]he 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (footnote omitted).

## ARGUMENT

**I.  CREW is likely to succeed on the merits.**

> **A.    CREW is likely to succeed on its APA claim that Defendants' action violated the 2023 Act.**

Defendants' action removing the Public Apportionments Database and refusing to post apportionment information, including footnotes and written explanations, on a publicly accessible website plainly violates the 2023 Act. OMB's failure to operate and maintain a system to publicly post approved apportionments is unlawful because the 2023 Act requires OMB to post the information on a public website in fiscal year 2023 and "each fiscal year thereafter." 2023 Act, § 204(1) (codified at 31 U.S.C. § 1513 note). OMB's failure to operate and maintain the Public Apportionments Database and post the apportionment information to it violates the 2023 Act's requirements that OMB "*shall* operate and maintain" the Public Apportionments Database that was required by the 2022 Act and "*shall* continue to post each document apportioning an appropriation … including any associated footnotes" and written explanations for those footnotes. *Id.* (emphases added). The Court thus should hold unlawful and set aside the challenged action. *See* 5 U.S.C. § 706(2)(A).

Defendants do not appear to dispute that their action is contrary to the requirements of the 2023 Act. *See* OMB Letter (stating that "[OMB] will no longer operate and maintain the publicly available automated system to which apportionments are posted envisioned in section 204 of division E of the Consolidated Appropriations Act, 2023"). Rather, they assert that "OMB has

determined that it can no longer operate and maintain" the Public Apportionments Database because doing so would "require[] the disclosure of sensitive, predecisional, and deliberative information." *Id.* The 2023 Act, however, does not exempt "sensitive, predecisional, and deliberative" information from its disclosure requirement. Because "Congress may determine for itself which [common law] privileges the Government may avail itself of and which it may not," *U.S. Dep't of Just. v. Julian*, 486 U.S. 1, 13 (1988); *see also* Wright & Miller, 23A Fed. Prac. & Proc. Evid. § 5437 (1st ed. Apr. 2025 update), Defendants' privilege claim does not justify their refusal to post apportionment information as required by law.

In any event, the apportionment information in the Public Apportionments Database was neither predecisional nor deliberative. Instead, the apportionment information required to be disclosed under the 2023 Act reflects a final decision approved by OMB. *See* 2022 Act, § 204(b) (codified at 31 U.S.C. § 1513 note) (requiring disclosure "after the date of *approval* of ... apportionment" (emphasis added)). Indeed, OMB has repeatedly stated that apportionments, including footnotes, are final "OMB-*approved plan[s]*" that are "legally binding." OMB Circular No. A-11 § 120.1 (emphasis added); *see id.* § 20.3 (stating that an "[a]pportionment is a plan, *approved* by OMB, to spend resources" (emphasis added)). As former OMB general counsel Samuel Bagenstos has explained, Defendants' assertion that apportionments contain predecisional and deliberative information "fundamentally misunderstands both the nature of apportionments and what it means to be 'predecisional.'" Bagenstos Decl. ¶ 11. "Apportionments are not part of the give and take that precedes a binding legal decision; they are the binding legal decisions themselves." *Id.*; *see id.* ¶ 12 ("The apportionment is ... the legally binding decision of the Executive Branch that enables an agency to spend appropriated money."). Other former OMB officials agree. *See* Schwartz Decl. ¶ 7; Carlile Decl. ¶¶ 6, 8. And "[t]he data posted on the publicly

13

available apportionment website included only the final, OMB approved, legally binding amounts and the accompanying footnotes, which are part of the final, OMB-approved apportionment decisions." Carlile Decl. ¶ 8.

The Anti-Deficiency Act confirms that apportionments are final decisions. That statute prohibits federal officials from "mak[ing] or authoriz[ing] an expenditure or obligation exceeding … an apportionment." 31 U.S.C. § 1517(1). And it imposes legal consequences on federal officials who violate that law. *Id.* §§ 1518–19 (imposing administrative and criminal penalties); *see* GAO Letter at 1 ("As apportionments are legally binding decisions on agencies under the Antideficiency Act, we note that such information, by definition, cannot be predecisional or deliberative." (citing 31 U.S.C. § 1517)). The deliberative process privilege does not shield such decisional documents with "real operative effect." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 160 (1975)).

Similarly baseless is Defendants' assertion that the information in the apportionments is "sensitive" because its disclosure "may pose a danger to national security and foreign policy." OMB Letter. As Congressmembers have explained, "there have never been national security concerns associated with th[e] statutory requirement" to post publicly the apportionment information. DeLauro & Murray Statement. A former OMB official similarly stated that in his nearly two decades of experience approving apportionments for the Departments of Justice, Homeland Security, and Transportation, he did "not recall a single case of a classified apportionment, or where an apportionment revealed classified information, even in the cases of the Department of Homeland Security and the Department of Justice." Schwartz Decl. ¶ 8. Further, according to an analysis by CREW and other organizations of the documents that had previously been available in the Public Apportionments Database, the posted information was provided in a

way that did not allow the public to see or gather insight into classified information. Letter, *Coalition Urges Reinstatement of the Office of Management and Budget Public Apportionment Tracker* (Apr. 7, 2025).[12] According to that analysis, "almost every Department of Defense (Military Programs) apportionment (4,187 of 4,191) and almost every Other Defense (Civil Programs) apportionment (104 of 155) that OMB has publicly disclosed since fiscal year 2022 contains a footnote," *id.*, that states: "A classified attachment displaying the apportionment of specific classified programs within the amount displayed may be included. All documents associated with this apportionment are unclassified except for the Classified Attachment," OpenOMB, *Research, Development, Test and Evaluation, Defense-wide*.[13] That is, the footnote disclosed that classified material could potentially exist, but it did not disclose any information about that material or whether it did exist for that apportionment.

When directing OMB to post apportionments, Congress understood that apportionments documents could potentially reference classified information. Congress therefore provided a mechanism for Congress to access that information, but not the public. *See* 2022 Act, § 204(c); 2023 Act, § 204(2) (codified at 31 U.S.C. § 1513 note) (stating that the requirements in section 204(c) of the 2022 Act "shall continue to apply"). Thus, "the apportionment transparency law already accounts for concerns about national security and foreign policy by permitting OMB to withhold classified information from the public database and provide that information separately to relevant congressional committee chairs." Bagenstos Decl. ¶ 16; *see id.* (stating that "it would be a straightforward matter to follow that process and redact from the public database any

---

[12]    https://www.rstreet.org/outreach/coalition-urges-reinstatement-of-the-office-of-management-and-budget-public-apportionment-tracker/.

[13]    https://openomb.org/file/11417433#page-footnote-funds.

information in apportionments or associated footnotes that raises significant national security or foreign policy concerns").

In sum, CREW is likely to succeed on its claim that Defendants' action is contrary to the requirements of law. Defendants' assertion that the database contains sensitive, predecisional, and deliberative material does not free the agency from following the statutory mandate that OMB maintain the database. To the contrary, "compliance with the apportionment transparency law was straightforward, did not interfere with the President's constitutional or statutory responsibilities or OMB's supervision of the Executive Branch, and was fully consistent with effective and efficient governance." Bagenstos Decl. ¶ 7.

**B.    CREW is likely to succeed on its APA claim that Defendants' action violated the Paperwork Reduction Act.**

CREW is also likely to succeed on its claim that Defendants' removal of the Public Apportionments Database and refusal to operate, maintain, and post apportionment information to a public website failed to comply with two requirements of the Paperwork Reduction Act: the requirement to provide timely and equitable access to public information and the requirement to provide notice before terminating significant information dissemination products.

**1.    Defendants violated the Paperwork Reduction Act's requirement to provide timely and equitable access to public information.**

Congress enacted the Paperwork Reduction Act to "ensure the greatest possible public benefit from and maximize the utility of information created, collected, maintained, used, shared and disseminated by or for the Federal Government" and to "provide for the dissemination of public information on a timely basis, on equitable terms, and in a manner that promotes the utility of the information to the public and makes effective use of information technology." 44 U.S.C. §§ 3501(2), (7). To accomplish these goals, Congress mandated that every agency "ensure that the public has timely and equitable access to the agency's public information." *Id.* § 3506(d)(1).

The Paperwork Reduction Act defines "public information" as "any information, regardless of form or format, that an agency discloses, disseminates, or makes available to the public." *Id.* § 3502(12). The apportionment information at issue is "public information"; because the 2023 Act requires Defendants to post the information on a publicly accessible website, it is information that OMB is required to "make[] available to the public." *Id.*

Defendants' refusal to post the apportionment information violates the requirement to provide the public with timely access to the information. The 2023 Act requires OMB to post publicly the information "not later than 2 business days after the date of approval of such apportionment." 2022 Act, § 204(b) (codified at 31 U.S.C. § 1513 note); *see* 2023 Act, § 204(1) (codified at 31 U.S.C. § 1513 note) (making permanent the 2022 Act's requirement). By refusing to post the information at all, Defendants are depriving the public of access to it in the time period required by law.

## 2. Defendants failed to observe procedures required by the Paperwork Reduction Act.

The Paperwork Reduction Act requires agencies to "provide adequate notice when initiating, substantially modifying, or terminating significant information dissemination products." 44 U.S.C. § 3506(d)(3). When Congress has set out a procedural notice requirement, and the agency fails to satisfy that requirement, the action is "not in accordance with law and without observance of procedure required by law, in violation of Section 706 of the APA." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Fed. Highway Admin.*, 151 F. Supp. 3d 76, 93–94 (D.D.C. 2015) (internal quotation marks omitted). Here, the removal of webpages and datasets failed to observe the Paperwork Reduction Act's adequate notice requirement.

The Paperwork Reduction Act does not define the term "significant information dissemination product." OMB, however, has defined "information dissemination product" as "any recorded information, regardless of physical form or characteristics, disseminated by an agency, or contractor thereof, to the public." OMB, Circular No. A-130 Revised (July 28, 2016), 2016 WL 7664619, at *22. Although OMB has not defined the term "significant," the ordinary meaning of "significant" is "having or likely to have influence or effect: important." *Drs. for Am. v. Off. of Pers. Mgmt.*, --- F. Supp. 3d ---, 2025 WL 452707, at *7 (D.D.C. Feb. 11, 2025) (quoting Merriam-Webster 1828 (11th ed. 2020)).

Here, the information in the Public Apportionments Database is an "information dissemination product" because it comprises information that OMB is required to disseminate to the public. And the Public Apportionments Database is a "significant dissemination product" because it is an important database; indeed, it is the *only* government repository that makes public OMB's apportionments. *See* Wentworth Decl. ¶¶ 9, 26; *see also* Carlile Decl. ¶¶ 11, 13. Accordingly, the Paperwork Reduction Act required Defendants to "provide adequate notice" before it removed the Public Apportionments Database. 44 U.S.C. § 3506(d)(3). Because Defendants provided no notice at all, CREW is likely to succeed on its claim that Defendants' action violated the Paperwork Reduction Act. *See Drs. for Am.*, 2025 WL 452707, at *7.

## II.  CREW will suffer irreparable harm absent a preliminary injunction.

An irreparable harm "'must be both certain and great; it must be actual and not theoretical' and it must be 'beyond remediation.'" *Nat'l Treasury Emps. Union v. Vought*, --- F. Supp. 3d ---, 2025 WL 942772, at *41 (D.D.C. Mar. 28, 2025). "[A]n informational injury 'can be sufficient to establish irreparable harm if the information sought is time-sensitive.'" *Drs. for Am.*, 2025 WL 452707, at *9 (quoting *Sai v. TSA*, 54 F. Supp. 3d 5, 10 (D.D.C. 2014)); *see CREW v. U.S. DOGE*

*Serv.*, 2025 WL 752367, at *14 (D.D.C. Mar. 10, 2025) ("*Timely* awareness is … necessary because 'stale information is of little value.'" (quoting *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988))). Thus, for example, courts have found irreparable harm in Freedom of Information Act (FOIA) lawsuits where the requested information is "urgently needed to inform 'debates about issues of vital national importance.'" *CREW*, 2025 WL 752367, at *14 (internal quotation marks omitted) (granting preliminary injunction compelling expedited disclosure of DOGE records); *see also, e.g.*, *Am. Oversight v. Dep't of State*, 414 F. Supp. 3d 182 (D.D.C. 2019); *Ctr. for Pub. Integrity v. Dep't of Def.*, 411 F. Supp. 3d 5, 13 (D.D.C. 2019). "[T]he potential for irreparable harm under these circumstances exists 'because ongoing public and congressional debates about issues of vital national importance cannot be restarted or wound back.'" *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 301 (D.D.C. 2017); *see CREW*, 2025 WL 752367, at *15. Moreover, irreparable harm exists where the defendants' actions "make it more difficult for the [plaintiffs] to accomplish their primary mission." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (finding irreparable harm where defendant's actions deprived voting-rights organizations of voter information to accomplish their mission of registering voters).

Here, CREW is suffering, and will continue to suffer, irreparable informational injury from Defendants' removal of public access to the Public Apportionments Database and the information within it. Monitoring the Executive Branch's use of congressionally appropriated funds is an important part of CREW's work, and CREW has relied on the information in the Public Apportionments Database to perform that work. *See* Wentworth Decl. ¶¶ 6–10. CREW's ability to monitor apportionments through the Public Apportionments Database promptly and without delay is essential to its mission to promote government transparency and accountability and to

disseminate information about government activity to the public. *Id.* ¶ 9. Timely access to OMB's apportionments allows CREW to evaluate changes in government operations and spending; accordingly, CREW typically accesses apportionment information as soon as it is posted in the Public Apportionments Database. *Id.* ¶¶ 7–8. But because apportionment information is not publicly available on any other government website, without timely access to apportionment information through the Public Apportionments Database, CREW is unable to conduct its work on issues involving government spending and satisfy its mission to inform the public about matters of significant public interest and importance. *See id.* ¶¶ 9, 26–27.

In particular, CREW urgently needs the information in the Public Apportionment Database because that information is "directly tied to current, ongoing actions" that are of significant national concern. *CREW*, 2025 WL 752367, at *14 (cleaned up). For example, CREW has regularly used the Public Apportionments Database to monitor, conduct advocacy on, and educate the public on issues involving the potential "impoundment"—that is, the delay or withholding— of appropriated funds in violation of the Impoundment Control Act. Wentworth Decl. ¶ 10; *see id.* ¶ 12 (discussing a letter sent by CREW to congressional leadership identifying a potential improper impoundment and citing the Public Apportionments Database); *id.* ¶ 16 (publication of materials on the Impoundment Control Act, including a resource that cites the 2023 Act's transparency requirement). Without prompt access to the apportionment information in the Public Apportionments Database, however, CREW cannot evaluate and inform the public about whether OMB is improperly withholding funds in violation of the Impoundment Control Act. *See id.* ¶ 9. In addition, CREW has regularly relied on the Public Apportionments Database to monitor how "DOGE" is funded, as part of CREW's ongoing work disseminating information to the public about that entity. *Id.* ¶ 18. CREW cannot monitor DOGE's funding and identify potential legal

issues arising from that funding without reviewing the apportionment information that was in the Public Apportionments Database. *Id.* ¶¶ 20, 27. CREW also has relied on the information in the Public Apportionments Database to submit FOIA requests and for court filings. *Id.* ¶¶ 21–22. Prompt access to the apportionment information is critical to CREW's role in informing the national debate on government funding and to Congress's and the public's ability to promptly discuss or respond to any possible legal violations. *Id.* ¶ 14. Accessing the information several months or years after an apportionment's approval—instead of within two business days as mandated by law—would have substantially less value to CREW and the public and would frustrate CREW's ability to fulfill its mission-critical functions. *Id.* ¶ 15.

CREW's informational injuries are heightened by the fact that Congress mandated disclosure no later than two business days after an apportionment's approval. *See* 2023 Act, § 204(1) (codified at 31 U.S.C. § 1513 note) (making permanent the 2022 Act's requirement); *see also* 2022 Act, § 204(b) (codified at 31 U.S.C. § 1513 note). Congress required swift disclosure—on a much faster timeline than that required by FOIA and other transparency laws—precisely because it recognized the time-sensitivity of apportionment data. "The time it would take to litigate … the merits … would likely result in a substantial delay of years. … By that time, … the information may indeed be 'stale,' or at least, significantly less useful than it once was." *CREW*, 2025 WL 752367, at *14. Meanwhile, "[i]rreparable harm is already occurring each day" OMB's apportionments continue in secret "without an informed public able to access relevant information." *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 13.

## III.    The balance of the equities and the public interest favor CREW.

As against the certain and irreparable injury that CREW is presently experiencing due to Defendants' unlawful actions, Defendants would suffer no cognizable harm if required to restore

21

the Public Apportionments Database. After all, the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Open Cmtys. Alliance v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017). Moreover, Defendants would suffer no injury from being required to comply with the same disclosure requirements that OMB has been subject to—and has complied with—since 2022.

A preliminary injunction also would serve the public interest. "There is generally no public interest in the perpetuation of unlawful agency action." *Id.* (citation omitted). "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws … that govern their existence and operations." *Id.* (citation omitted). Moreover, restoring immediate access to the apportionment information here would significantly serve the public interest because it would provide the public and Congress with transparency into the government's funding of programs and into potential presidential misuses of taxpayer funds, and allow them to hold the Executive Branch accountable for such actions. *See* Wentworth Decl. ¶¶ 9, 27; *see also* Carlile Decl. ¶¶ 9–13.

More specifically, immediate access to the information serves the public interest because the information bears on issues of current national concern. President Trump has instructed OMB to use the apportionment process to implement the administration's policy directives. *See Ensuring Accountability for All Agencies*, Exec. Order No. 14,215, 90 Fed. Reg. 10447, 10448 (Feb. 18, 2025) (ordering that OMB "consult with independent regulatory agency chairmen and adjust such agencies' apportionments by activity, function, project, or object, as necessary and appropriate, to advance the President's policies and priorities"). For example, President Trump has ordered OMB to use its apportionment authority to pause obligations and disbursements of foreign development

assistance,[14] and he has threatened to withhold or condition federal funding to states and cities that do not comply with his policy directives.[15] In addition, the Public Apportionments Database, prior to its removal, contained the only public information about DOGE's funding structure. *See* Wentworth Decl. ¶ 20. For example, documents previously posted on the Public Apportionments Database revealed that OMB had apportioned to the DOGE account over $41 million despite the lack of any congressional appropriations for DOGE, and that the statutory authority asserted as one of the sources of DOGE's funding may have been "a misapplication" of the statute.[16] In addition to news articles that raised questions about DOGE's funding structure based on these apportionments,[17] members of Congress referred to the apportionments when seeking information about DOGE's funding.[18] Moreover, the Public Apportionments Database, prior to its removal, contained the only public information about the total amount of funding available for a Department

---

[14] *See Reevaluating and Realigning United States Foreign Aid*, Exec. Order No. 14,169, 90 Fed. Reg. 8619, 8619 (Jan. 20, 2025).

[15] *Protecting the American People Against Invasion*, Exec. Order No. 14,159, 90 Fed. Reg. 8443 (Jan. 20, 2025); Reuters, *Trump's two asks from California: voter ID laws and water flow* (Jan. 24, 2025), https://www.reuters.com/world/us/trumps-two-asks-california-voter-id-laws-water-flow-2025-01-24/; Zusha Elinson, *Trump Wanted an Apology. He Got Maine's No-Nonsense Governor Instead*, Wall St. J. (Mar. 30, 2025), https://www.wsj.com/politics/policy/trump-wanted-an-apology-he-got-maines-no-nonsense-governor-instead-62834175.

[16] Letter from Rep. Steny H. Hoyer, Ranking Member, Subcommittee on Financial Services and General Government, House Appropriations Committee, et al., to David Joyce, Chairman, Subcommittee on Financial Services and General Government, House Appropriations Committee, at 2 (Mar. 24, 2025) (Hoyer Letter), https://hoyer.house.gov/sites/evo-subsites/hoyer.house.gov/files/evo-media-document/final-letter-to-joyce-re-doge.pdf.

[17] Peter Cohn, *White House opens funding spigot for DOGE expenses*, Roll Call (Feb. 4, 2025), https://rollcall.com/2025/02/04/white-house-opens-funding-spigot-for-doge-expenses/; Avi Asher-Schapiro, Andy Kroll & Christopher Bing, *DOGE's Millions: As Musk and Trump Gut Government, Their Ax-Cutting Agency Gets Cash Infusion*, ProPublica (Feb. 20, 2025), https://www.propublica.org/article/doge-trump-musk-funding-foia-congress-transparency.

[18] *See* Hoyer Letter.

of Housing and Urban Development program that provides grants to communities impacted by natural disasters. *See* Carlile Decl. ¶¶ 11–13.

Numerous members of the public, including government officials, have explained the important public interest in restoring immediate access to the Public Apportionments Database. For example, senior Members of the House and Senate Appropriations and Budget Committees have explained that it is important for American taxpayers to have "transparency and accountability for how their money is being spent." DeLauro & Murray Statement; *see* Boyle Statement (similar). GAO, an independent, non-partisan agency with significant statutory responsibilities in reviewing the Executive Branch's use of appropriated funds,[19] stated that public access to the Public Apportionments Database is "essential" because "Congress and the American taxpayer depend on GAO to carry out Congress's oversight responsibilities, specifically with regard to its power of the purse." GAO Letter at 2. In addition, GAO stated that "[a]pportionment transparency facilitates oversight of federal spending" and that "[b]ecause apportionments bind agencies as to both how and when appropriations may be obligated or expended, they provide invaluable insight into agency funding decisions" and "helpful context for GAO examinations of agency compliance with statutes such as the Antideficiency Act and Impoundment Control Act." *Id.*

Similarly, a coalition of organizations, including CREW, has explained that Defendants' removal of the Public Apportionments Database is of "deep concern" because that database is "a critical tool for Congress and the public to ensure that the funding passed in appropriations laws is spent consistent with congressional intent."[20] Moreover, because many appropriated funds

---

[19] U.S. Gov't Accountability Off., *About* (last visited Apr. 15, 2025), https://www.gao.gov/about; *see, e.g.*, 31 U.S.C. §§ 712, 1351, 1517, 3529; 2 U.S.C. §§ 686–87.

[20] Letter, *Coalition Urges Reinstatement*, *supra.*

remain available for only a limited time period, there is an urgent need for Congress, the public, and watchdog organizations like CREW to have access to apportionments within two business days, as required by law, to identify and mitigate any possible harm from the withholding or misuse of funds and monitor the use of those funds before they expire. Wentworth Decl. ¶ 8.

In short, the balance of the equities and the public interest weigh decisively in favor of granting a preliminary injunction. Absent immediate public access to the apportionment information, the administration can misuse taxpayer funds in secret, hindering the public and Congress's ability to hold the administration accountable for its actions.

## IV.    Partial summary judgment is appropriate at this time.

Although the preliminary injunction that CREW seeks is necessary to prevent imminent irreparable injury, CREW also seeks expedited partial summary judgment of its claims that Defendants' action is contrary to the 2023 Act and the Paperwork Reduction Act. A prompt and final resolution of these claims will ensure continued access to the important apportionment information at issue in this case. *See* 28 U.S.C. § 1657(a) (stating that "each court of the United States … shall expedite the consideration of any action … if good cause therefor is shown").

Courts in this Circuit have considered motions for a preliminary injunction and for summary judgment jointly in appropriate cases. *See, e.g.*, *Grundmann v. Trump*, 2025 WL 782665, at *4 (D.D.C. Mar. 12, 2025); *Nat'l Ass'n for Fixed Annuities v. Perez*, 217 F. Supp. 3d 1, 8 (D.D.C. 2016); *Hedgeye Risk Mgmt., LLC v. Heldman*, 196 F. Supp. 3d 40, 46 (D.D.C. 2016); *Rigdon v. Perry*, 962 F. Supp. 150, 165 (D.D.C. 1997); *see also* Fed. R. Civ. P. 65(a)(2) (authorizing consolidated hearing of preliminary injunction and trial on the merits); *Hoai v. Superior Ct.*, 473 F. Supp. 2d 75, 78 n.4 (D.D.C. 2007) (ordering consolidation under Rule 65(a)(2)); *City of New Haven v. United States*, 634 F. Supp. 1449, 1451 n.1 (D.D.C. 1986) (same).

Here, the parties' briefing at this time can fully address the merits issues that will determine the final disposition of CREW's claims that Defendants' action is contrary to law, which implicates only questions of law and no disputed facts. Moreover, expeditious final disposition will benefit CREW, the public, and Congress so that they can be assured of access to the vital information at issue here.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for a preliminary injunction and partial summary judgment.

Dated: April 18, 2025                    Respectfully submitted,

                                         /s/ *Wendy Liu*
                                         Wendy Liu (DC Bar No. 1600942)
                                         Adina H. Rosenbaum (DC Bar No. 490928)
                                         Allison M. Zieve (DC Bar No. 424786)
                                         Public Citizen Litigation Group
                                         1600 20th Street NW
                                         Washington, DC 20009
                                         (202) 588-1000
                                         wliu@citizen.org

                                         Nikhel S. Sus (DC Bar No. 1017937)
                                         Yoseph T. Desta (DC Bar No. 90002042)*
                                         Citizens for Responsibility and Ethics in Washington
                                         1331 F Street NW, Suite 900
                                         Washington, DC 20004
                                         Phone: (202) 408-5565
                                         Fax: (202) 508-5020
                                         nsus@citizensforethics.org
                                         ydesta@citizensforethics.org

                                         *admitted *pro hac vice*

                                         *Counsel for Plaintiff*