UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICE OF MANAGEMENT AND BUDGET, et al.,<br><br>    Defendants. | Civil Action No. 25-cv-1051 |

**DECLARATION OF CHRISTINA L. WENTWORTH**

I, Christina L. Wentworth, declare as follows:

1. I am Senior Policy Counsel for Citizens for Responsibility and Ethics in Washington (CREW). At CREW, I develop resources to educate the public and lawmakers about government operations, provide technical assistance on legislation and oversight, advocate for ethics and transparency in government, seek government records and data under the Freedom of Information Act (FOIA), and draft written public-facing analyses, reports, and other materials to raise awareness of government activities. As part of this work, I analyze laws making appropriations and routinely monitor federal spending and the potential withholding of federal funds by the executive branch in violation of the Impoundment Control Act (ICA).

2. Before working at CREW, I served as Counsel for the House Budget Committee and as an Appropriations Law Attorney at the U.S. Government Accountability Office.

3. I make this declaration based on my personal knowledge, consultation with my colleagues at CREW, and review of CREW's files.

4. CREW is a non-partisan, non-profit government watchdog organization based in Washington, D.C. CREW is committed to protecting the rights of citizens to be informed about the activities of government officials and agencies; monitoring and informing the public about key government activities, including the executive branch's use of appropriated funds; ensuring transparency, ethics, and integrity in government; and empowering citizens to have an influential voice in government decisions and in the government's decision-making process.

5. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of those activities, CREW routinely relies on government records and data made available to it under FOIA, the Ethics in Government Act, the Federal Advisory Committee Act, and other federal transparency laws. CREW uses that information to create public-facing reports, draft administrative complaints and requests for investigation, and craft targeted FOIA requests for additional information, including resources and requests related to federal government spending.[1] CREW widely disseminates these materials to the public through its website, which typically receives over 150,000 page views every month.

6. In support of CREW's work monitoring how the executive branch utilizes appropriated funds, CREW routinely relies on the website through which the Office of Management and Budget (OMB)—until recently—publicly posted each document apportioning

---

[1] *See, e.g.*, CREW, *Mnuchin's Middle East business trips cost Secret Service up to $253,000* (May 3, 2023), https://www.citizensforethics.org/reports-investigations/crew-investigations/mnuchins-middle-east-business-trips-cost-secret-service-up-to-253000/; CREW, *The Architect of the Capitol abused his authority. Congress should call for his resignation* (Nov. 17, 2022), https://www.citizensforethics.org/news/analysis/the-architect-of-the-capitol-abused-his-authority-congress-should-call-for-his-resignation/; CREW, *Pompeo's Madison Dinners cost taxpayers nearly $65,000* (July 7, 2021), https://www.citizensforethics.org/reports-investigations/crew-investigations/pompeo-madison-dinners-cost-taxpayers-nearly-65000/; CREW, *Congress told ICE to decrease detentions. Then ICE spent $20 million+ expanding its network* (Oct. 13, 2020), https://www.citizensforethics.org/reports-investigations/crew-investigations/congress-told-ice-to-decrease-detentions-20-million-expanding-lasalle-corrections/.

an appropriation no later than two business days after approval of an apportionment (the Public Apportionments Database).[2]

7. Because CREW compares new apportionments to prior apportionments to evaluate changes in government operations, access to all approved apportionments required to be made publicly available—that is, apportionments approved from fiscal year 2022 onward—is critical to CREW's work in monitoring federal government spending.

8. Timely access to apportionments also is critical to CREW's work monitoring, analyzing, and reporting on issues related to impoundments and federal government spending.[3] Recipients of federal financial assistance may suffer immediate harm if the federal government withholds federal funding,[4] and without access to apportionments within the time mandated by law—"not later than 2 business days after the date of approval of such apportionment"[5]—CREW cannot contemporaneously monitor whether OMB is using the apportionment process to withhold appropriated funds. In addition to the need for CREW to have prompt access to apportionments to monitor potential impoundments, CREW's work analyzing executive branch spending, generally,

---

[2] *Approved Apportionments*, OMB, https://apportionment-public.max.gov/; 31 U.S.C. § 1513 note.

[3] An impoundment occurs "[w]hen the President (or any officer or employee of the executive branch), through action or inaction, delays or withholds enacted funding." U.S. Gov't Accountability Office, *Impoundment Control Act* (last visited Apr. 17, 2025), https://www.gao.gov/legal/appropriations-law/impoundment-control-act. Such enacted funding includes appropriations available for a fixed period, which "expire[]" at the end of their period of availability, and appropriations available for an indefinite period. *See* U.S. Gov't Accountability Office, GAO-05-734SP, *A Glossary of Terms Used in the Federal Budget Process* 21 (Sept. 2005) (defining "appropriations" as "[b]udget authority to incur obligations and to make payments from the Treasury for specific purposes"); *id.* at 22–23 (defining different durations of appropriations).

[4] "It is so obvious that it almost need not be stated that when money is obligated and therefore expected (particularly money that has been spent and reimbursement is sought) and is not paid as promised, harm follows—debt is incurred, debt is unpaid, essential health and safety services stop, and budgets are upended." Mem. and Order, at 35, *New York v. Trump*, No. 1:25cv39 (D.R.I. Mar. 6, 2025), ECF No. 161.

[5] 31 U.S.C. § 1513 note.

is time-sensitive given the limited period of availability of many appropriated funds.[6] That is, because time-limited funds remain available for obligation, or new legal commitments, only during their period of availability, it is important that CREW alert the public to the potential misuse of such funds before they expire.[7] Accordingly, CREW typically accesses apportionments as soon as they are posted.

9. CREW's ability to monitor apportionments through the Public Apportionments Database promptly and without delay is essential to its mission to promote government transparency and accountability and to disseminate information about government activity to the public. OMB does not post approved apportionments for executive agencies on any other publicly available government website or otherwise make apportionments publicly available. Without timely access to apportionments, CREW is unable to satisfy its mission to inform the public about matters of significant public interest and importance.

10. CREW relies on the Public Apportionments Database to monitor potential withholdings of appropriated funds and to support its work related to the ICA.[8]

11. Because apportionments are legally binding, and because federal officials who are responsible for obligating or expending more than OMB has apportioned may face administrative or criminal penalties, apportionments represent a powerful tool for OMB control of agency activity.[9]

---

[6] *See supra* note 3.
[7] *See* 31 U.S.C. § 1502(a); U.S. Gov't Accountability Office, GAO-05-734SP, *A Glossary of Terms Used in the Federal Budget Process* 70 (Sept. 2005) (defining "obligation" as a "definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received").
[8] The ICA prohibits the president from unilaterally withholding congressionally appropriated funds, but gives the president strictly circumscribed authority to temporarily do so after proposing funds for "deferral" or "rescission" under the procedures outlined in the Act. 2 U.S.C. §§ 681–88.
[9] 31 U.S.C. §§ 1517–19.

12. On January 20, 2025, President Trump issued a series of executive orders establishing the president's policy agenda for his second term and directing agencies to "pause," or withhold, funds appropriated by Congress.[10] This included an order to all department and agency heads to "immediately pause new obligations and disbursements" of foreign development assistance, and a direction that OMB "shall enforce this pause through its apportionment authority."[11] In response to these directives, CREW sent a letter to congressional leadership, alerting them to the fact that the president had directed these withholdings without complying with the procedures outlined in the ICA.[12] In the letter, CREW explained that during the first Trump administration OMB had violated the ICA by using apportionments to withhold funds for policy reasons, and that the president now had "directed OMB to attempt to use its limited apportionment authority to again withhold funds to further the president's policies."[13] CREW highlighted that Congress had passed a law requiring OMB to publish apportionments and cited the public website on which OMB posted such documents, "urg[ing] Congress to ensure that OMB continues to comply with" this law to "facilitate Congress's and GAO's review of any withholdings at OMB."[14]

13. As of April 15, 2025, CREW's landing webpage for this letter had been viewed 18,244 times.[15]

---

[10] *See Reevaluating and Realigning United States Foreign Aid*, Exec. Order No. 14,169, 90 Fed. Reg. 8619 (Jan. 20, 2025) (hereinafter *Reevaluating Foreign Aid*); *Unleashing American Energy*, Exec. Order No. 14,154, 90 Fed. Reg. 8353 (Jan. 20, 2025); *Protecting the American People Against Invasion*, Exec. Order No. 14,159, 90 Fed. Reg. 8443 (Jan. 20, 2025).

[11] *See Reevaluating Foreign Aid*.

[12] Letter from CREW to Sen. Thune, Sen. Schumer, Rep. Johnson, & Rep. Jeffries, *Re: Potential Impoundment Control Act Violations*, at 1, 4 (Jan. 27, 2025), https://www.citizensforethics.org/wp-content/uploads/2025/01/Letter-to-Congress_-Potential-Impoundment-Control-Act-Violations.pdf.

[13] *Id.* at 5.

[14] *Id.* at 5–6; *id.* at 5 n.32.

[15] *See* CREW, *Trump's executive orders may violate the Impoundment Control Act* (Jan. 27, 2025), https://www.citizensforethics.org/legal-action/letters/trumps-executive-orders-may-violate-impoundment-control-act/.

14. Prompt public awareness of any use of the apportionment process to withhold funds is critical to CREW's role in informing the national debate on government funding and to Congress's and the public's ability to promptly discuss or respond to any possible legal violations.

15. If CREW gained access to apportionment data several months or years after an apportionment's approval—instead of within two business days as mandated by law—the information would have substantially less value to CREW and the public, and would frustrate CREW's ability to fulfill its mission-critical functions.

16. In addition to CREW's work monitoring the potential use of the apportionment process to withhold funds, CREW has published other materials on the ICA, including an analysis related to the Act's procedures for reducing government spending and a resource on the ICA's "Key Concepts," which explains OMB's role in apportioning funds and outlines the requirement that OMB publicly post each document apportioning an appropriation.[16]

17. As of April 15, 2025, CREW's ICA analysis and its landing webpage for the "Key Concepts" resource had been viewed 7,034 and 1,922 times, respectively.[17]

---

[16] CREW, *Key Concepts Related to the Impoundment Control Act of 1974* (last visited Apr. 17, 2025), https://www.citizensforethics.org/wp-content/uploads/2025/01/Key-ICA-Concepts.pdf; *see also* CREW, *Why Trump's confusion about the Impoundment Control Act is a problem for him, for Congress and for everyday Americans* (Feb. 4, 2025), https://www.citizensforethics.org/news/analysis/why-trumps-confusion-about-the-impoundment-control-act-is-a-problem-for-him-for-congress-and-for-everyday-americans/ (ICA Analysis).

[17] *See* ICA Analysis, *supra* note 16; *see also* CREW, *Understanding the Impoundment Control Act* (Feb. 4, 2025), https://www.citizensforethics.org/reports-investigations/crew-reports/understanding-the-impoundment-control-act/.

18.     CREW also relies on the Public Apportionments Database to monitor funding for the U.S. DOGE Service (DOGE), which the president established on January 20, 2025.[18] CREW actively seeks and disseminates information about DOGE to the public.[19]

19.     I am unaware of any funding that Congress has appropriated specifically for DOGE. However, between January 27, 2025, and March 2, 2025, OMB approved a series of apportionments (the "DOGE apportionments"), totaling $41,121,156, for a "Software Modernization Initiative" for a United States DOGE Service account.[20] Many of the apportionments referred to the Economy Act or otherwise cited "reimbursements" as the source of the funds.[21]

20.     The only way for CREW to monitor funding apportioned to DOGE is by reviewing publicly posted apportionments.

---

[18] *See Establishing and Implementing the President's "Department of Government Efficiency,"* Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025).

[19] *See, e.g.*, CREW, *CREW requests records on DOGE* (Jan. 9, 2025), https://www.citizensforethics.org/reports-investigations/foia-requests/crew-requests-records-on-doge/; CREW, *Attacks on the CFPB highlight DOGE's pretense* (Feb. 28, 2025), https://www.citizensforethics.org/news/analysis/attacks-on-the-cfpb-highlight-doges-pretense/; Letter from CREW to National Archives and Records Administration, *Re: Second Notice of Potential Failure to Preserve, Removal or Destruction of Federal Records by DOGE* (Mar. 3, 2025), https://www.citizensforethics.org/wp-content/uploads/2025/03/CREW-2nd-Letter-to-NARA-1-1.pdf.

[20] *See* Letter from CREW to OMB, *Re: Expedited Freedom of Information Act Request* 5–6 (Mar. 28, 2025) https://www.citizensforethics.org/wp-content/uploads/2025/03/2025.03.28-OMB-DOGE-Apportionments-FOIA-Request.pdf; Letter from CREW to U.S. DOGE Service, *Re: Expedited Freedom of Information Act Request* 5–6 (Mar. 28, 2025), https://www.citizensforethics.org/wp-content/uploads/2025/03/2025.03.28-DOGE-Apportionments-FOIA-Request.pdf.

[21] *See supra* note 20.

21. Based on CREW's review of the DOGE apportionments, CREW identified potential legal issues with the sources of the funding and submitted FOIA requests to OMB and DOGE for additional information.[22]

22. CREW also has relied on the DOGE apportionments in court filings.[23]

23. When I attempted to access the Public Apportionments Database on March 24, 2025, the website displayed a "Page Not Found" error message.[24]

24. I am unaware of any notice or explanation provided to the public before the removal of the Public Apportionments Database.

25. As of April 17, 2025, the Public Apportionments Database still displayed a "Page Not Found" error message.[25]

26. To the best of my knowledge, the Public Apportionments Database and the information that it contains, including information about apportionments approved from fiscal year 2022 onward, and any apportionments that OMB has approved since the removal of the Public Apportionments Database, have not been made available by OMB on any publicly available government website.

27. Without access to the Public Apportionments Database, CREW cannot monitor apportionments for potential withholdings by OMB or monitor apportionments for DOGE.

---

[22] *See id.*

[23] Mem. in Support of Mot. for Prelim. Inj., at 2 n.1, *CREW v. U.S. DOGE Serv.*, No. 1:25cv511 (D.D.C. Feb. 20, 2025); Reply in Support of Mot. for Prelim. Inj., at 8, n.12, 9 n.15, *CREW v. U.S. DOGE Serv.*, No. 1:25cv511 (D.D.C. Mar. 4, 2025).

[24] *See Approved Apportionments*, *supra* note 2.

[25] *Id.*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: April 18, 2025

_____

Christina L. Wentworth