## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————

CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON,

    Plaintiff,

        v.

OFFICE OF MANAGEMENT AND
BUDGET, et al.,

    Defendants.

———————————————————————

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 25-cv-1051

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND PARTIAL SUMMARY JUDGMENT

Wendy Liu (DC Bar No. 1600942)
Adina H. Rosenbaum (DC Bar No. 490928)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
wliu@citizen.org

Nikhel S. Sus (DC Bar No. 1017937)
Yoseph T. Desta (DC Bar No. 90002042)*
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
(202) 408-5565
nsus@citizensforethics.org
ydesta@citizensforethics.org

      *admitted *pro hac vice*

*Counsel for Plaintiff*

May 4, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.    CREW has standing.................................................................................................. 2

II.   Defendants' removal of the Public Apportionments Database is unlawful. ........................... 7

      A.    Defendants' removal of the database violates the 2023 Act. ........................................ 7

      B.    Defendants violated the Paperwork Reduction Act. .................................................... 11

III.  If the Court does not enter partial summary judgment for CREW, a preliminary injunction is warranted. .................................................................................................................. 12

      A.    CREW is suffering ongoing irreparable harm. ............................................................ 13

      B.    The balance of the equities supports a preliminary injunction. .................................... 15

IV.   A security bond would be inappropriate in this case. ............................................................ 16

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                             **Pages**

*Campaign Legal Center v. Federal Election Commission*,
   31 F.4th 781 (D.C. Cir. 2022) ........................................................................ 2, 4, 5

*Campaign Legal Center & Democracy 21 v. Federal Election Commission*,
   952 F.3d 352 (D.C. Cir. 2020) (per curiam) ......................................................... 2, 3

*Clinton v. City of New York*,
   524 U.S. 417 (1998) ..................................................................................... 8

*Competitive Enterprise Institute v. National Highway Traffic Safety Administration*,
   901 F.2d 107 (D.C. Cir. 1990) ........................................................................... 5

*Citizens for Responsibility & Ethics in Washington v. Federal Election Commission*,
   2023 WL 6141887 (D.D.C. Sept. 20, 2023) ........................................................... 3

*Citizens for Responsibility & Ethics in Washington v. United States DOGE Service*,
   -- F. Supp. 3d ---, 2025 WL 752367 (D.D.C. Mar. 10, 2025) ................................... 13

*Citizens for Responsibility & Ethics in Washington v. United States Postal Service*,
   557 F. Supp. 3d 145 (D.D.C. 2021) ................................................................... 10

*Department of Education v. Brown*,
   600 U.S. 551 (2023) ..................................................................................... 2

*Doctors for America v. Office of Personnel Management*,
   -- F. Supp. 3d ---, 2025 WL 452707 (D.D.C. Feb. 11, 2025) ................................... 13

*DSE, Inc. v. United States*,
   169 F.3d 21 (D.C. Cir. 1999) ........................................................................... 16

*Electronic Privacy Information Center v. Presidential Advisory Commission on Election Integrity*,
   266 F. Supp. 3d 297 (D.D.C. 2017) .................................................................... 6

*Environmental Defense Fund v. EPA*,
   922 F.3d 446 (D.C. Cir. 2019) ....................................................................... 3, 4

*Federal Election Commission v. Akins*,
   524 U.S. 11 (1998) ..................................................................................... 2, 5

*Friends of Animals v. Jewell*,
   828 F.3d 989 (D.C. Cir. 2016) .................................................................... 2, 3, 4

*Friends of Animals v. Salazar*,
   626 F. Supp. 2d 102 (D.D.C. 2009) ..................................................................... 5

*Harrington v. Bush*,
　553 F.2d 190 (D.C. Cir. 1977) ........................................................................... 9

*Immigration & Naturalization Service v. Chadha*,
　462 U.S. 919 (1983) ........................................................................................... 8

*Kendall v. United States ex rel. Stokes*,
　37 U.S. (12 Pet.) 524 (1838) .............................................................................. 8

*League of Women Voters of United States v. Newby*,
　838 F.3d 1 (D.C. Cir. 2016) .............................................................................. 14

*National Association of Diversity Officers in Higher Education v. Trump*,
　-- F. Supp. 3d ---, 2025 WL 573764 (D. Md. Feb. 21, 2025) ........................... 16

*National Council of Nonprofits v. Office of Management & Budget*,
　-- F. Supp. 3d. ---, 2025 WL 597959 (D.D.C. Feb. 25, 2025) .......................... 16

*National Environmental Development Association's Clean Air Project v. Environmental Protection Agency*,
　752 F.3d 999 (D.C. Cir. 2014) .......................................................................... 11

*National Treasury Employees Union v. Nixon*,
　492 F.2d 587 (D.C. Cir. 1974) ............................................................................ 8

*Open Communities Alliance v. Carson*,
　286 F. Supp. 3d 148 (D.D.C. 2017) .................................................................. 15

*P.J.E.S. ex rel. Escobar Francisco v. Wolf*,
　502 F. Supp. 3d 492 (D.D.C. 2020) .................................................................. 16

*Pacito v. Trump*,
　-- F. Supp. 3d ---, 2025 WL 893530 (W.D. Wash. Mar. 24, 2025) .................. 16

*Payne Enterprises v. United States*,
　837 F.2d 486 (D.C. Cir. 1988) .......................................................................... 13

*Protect Democracy Project, Inc. v. National Security Agency*,
　10 F.4th 879 (D.C. Cir. 2021) ............................................................................. 9

*Public Citizen v. Department of Justice*,
　491 U.S. 440 (1989) ....................................................................................... 2, 5

*Public Citizen, Inc. v. National Highway Traffic Safety Administration*,
　489 F.3d 1279 (D.C. Cir. 2007) .......................................................................... 5

*Reporters Committee for Freedom of the Press v. Federal Bureau of Investigation*,
　3 F.4th 350 (D.C. Cir. 2021) ............................................................................. 10

*Sackett v. Environmental Protection Agency*,
566 U.S. 120 (2012) ............................................................................................ 11

*Sai v. Transportation Security Administration*,
54 F. Supp. 3d 5 (D.D.C. 2014) ........................................................................... 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .............................................................................................. 2

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .............................................................................................. 5

*United States Department of Justice v. Julian*,
486 U.S. 1 (1988) ................................................................................................ 10

*United States Department of Navy v. Federal Labor Relations Authority*,
665 F.3d 1339 (D.C. Cir. 2012) ............................................................................ 9

*\*United States Fish & Wildlife Service v. Sierra Club, Inc.*,
592 U.S. 261 (2021) ............................................................................................ 10

*United States v. Arthur Young & Co.*,
465 U.S. 805 (1984) ............................................................................................ 10

*United to Protect Democracy v. Presidential Advisory Commission on Election Integrity*,
288 F. Supp. 3d 99 (D.D.C. 2017) ........................................................................ 3

*\*Widakuswara v. Lake*,
2025 WL 945869 (S.D.N.Y. Mar. 28, 2025) ........................................................ 8

**Constitutional Provisions**

U.S. Const. art. I, § 1 ............................................................................................ 8

U.S. Const. art. II, § 3 ........................................................................................... 8

**Statutory Provisions**

15 U.S.C. § 78n(c) ................................................................................................ 6

29 U.S.C. § 1024(b) .............................................................................................. 6

29 U.S.C. § 1025(a) .............................................................................................. 6

31 U.S.C. § 331(e)(1) .......................................................................................... 15

31 U.S.C. §§ 1517–19 ......................................................................................... 10

42 U.S.C. § 11001 et seq ....................................................................................... 6

*Consolidated Appropriations Act, 2022
(codified at 31 U.S.C. § 1513 note) ................................................................ 7, 11

*Consolidated Appropriations Act, 2023
(codified at 31 U.S.C. § 1513 note) ................................................ 1, 3, 5, 7, 8, 9, 10, 11, 12, 15

Digital Accountability and Transparency Act of 2014,
31 U.S.C. § 6101 note ................................................................................. 9

Federal Advisory Committee Act,
5 U.S.C. § 1001 et seq. ............................................................................... 6

Federal Election Campaign Act,
52 U.S.C. § 30101 et seq. ............................................................................ 6

Federal Funding Accountability and Transparency Act,
Pub. L. 109–282, 120 Stat. 1186 (2006) ............................................................ 9

Freedom of Information Act,
5 U.S.C. § 552 ............................................................................... 4, 6, 7, 14

Government in the Sunshine Act,
5 U.S.C. § 552b ........................................................................................ 6

*Paperwork Reduction Act,
44 U.S.C. § 3506 ............................................................................. 1, 3, 11, 12

## Other Authorities

*MAX Information and Reports (Executive, Legislative, and Judicial Users): FY 2025 - SF 133
Reports on Budget Execution and Budgetary Resources ........................................... 14

Office of Management & Budget, *Annual Freedom of Information Act Report for Fiscal Year
2023* ................................................................................................. 5

U.S. Department of the Treasury, *Financial Report of the United States Government:
Fiscal Year 2024* ................................................................................... 15

Wright & Miller, 23A Fed. Prac. & Proc. Evid. § 5437 (1st ed. Apr. 2025 update) ................... 10

# INTRODUCTION

Defendants Office of Management and Budget (OMB) and its Director Russell Vought concede that they are violating the law. They agree that their removal of a database with documents reflecting OMB's apportionment decisions, including footnotes and written explanations (the Public Apportionments Database) violates the Consolidated Appropriations Act, 2023 (2023 Act). And they do not dispute that their removal of that database violates the Paperwork Reduction Act's requirements to provide timely access to public information and to provide adequate notice before removing the information.

Defendants instead assert that their action does not injure plaintiff Citizens for Responsibility and Ethics in Washington (CREW). But CREW's declaration shows that the challenged action has caused CREW to suffer a quintessential informational injury. As for the merits, Defendants' position that the Executive Branch is not required to comply with the 2023 Act and the Paperwork Reduction Act should be resoundingly rejected. Defendants' policy disagreement with the 2023 Act's disclosure requirements provides no basis for their refusal to follow the law, and their assertion that the statute impermissibly intrudes on Executive power runs flatly contrary to the division of powers at the heart of our constitutional system. Defendants' contention that the apportionment information is shielded by the deliberative process privilege likewise lacks merit, both because the statute does not provide an exception for deliberative material and because the apportionment information reflects final decisions, not predecisional deliberations.

Because there are no disputed material facts and the merits are clear, this Court should grant partial summary judgment on CREW's Administrative Procedure Act (APA) claims that Defendants' removal of the Public Apportionments Database is contrary to law. In the alternative,

the Court should grant a preliminary injunction because CREW is correct on the merits, CREW is suffering irreparable harm from Defendants' action, and the balance of the equities and public interest weigh decisively in CREW's favor.

## ARGUMENT

## I.    CREW has standing.

To establish standing, a plaintiff must show injury in fact, causation, and redressability. *Campaign Legal Ctr. v. FEC*, 31 F.4th 781, 788–89 (D.C. Cir. 2022). All three requirements are met here: CREW has suffered and continues to suffer a concrete injury by being deprived of the information in the Public Apportionments Database. The injury is fairly traceable to Defendants' decision to remove the database. And a ruling that Defendants' action is contrary to law and enjoining their removal of the database would redress CREW's injury by restoring its access to the information. Arguing that CREW has not suffered injury in fact, Defendants challenge only the first prong.

**A.** "[A]n injury in fact" must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (cleaned up). "The existence and scope of an injury for informational standing purposes is defined by Congress: a plaintiff seeking to demonstrate that it has informational standing generally 'need not allege any *additional* harm beyond the one Congress has identified.'" *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016); citing *FEC v. Akins*, 524 U.S. 11 (1998), and *Public Citizen v. DOJ*, 491 U.S. 440 (1989)). Rather, as the D.C. Circuit has repeatedly stated, "[t]he law is settled that a denial of access to information qualifies as an injury in fact where a statute … requires that the information be publicly disclosed and there is no reason to doubt [plaintiffs'] claim that the information would help them." *Campaign Legal Ctr.*, 31 F.4th at 783 (quoting *Campaign Legal Ctr. & Democracy 21 v. FEC*, 952 F.3d 352, 356

(D.C. Cir. 2020) (per curiam)); *Env't Def. Fund v. EPA*, 922 F.3d 446, 452 (D.C. Cir. 2019) (quoting *Friends of Animals*, 828 F.3d at 992) (same).

For example, in *Campaign Legal Center & Democracy 21 v. FEC*, the D.C. Circuit found that the plaintiffs were injured by the Federal Election Commission's failure to disclose campaign spending information as mandated by statute, where disclosure "would further [the nonprofit organizations'] efforts to defend and implement campaign finance reform." 952 F.3d at 356. Similarly, in *Environmental Defense Fund v. EPA*, the court held that an environmental group had raised a "quintessential claim of informational standing" where the statutorily mandated public disclosure of chemical information would "promote [the group's] environmental interests, research, and educational activities." 922 F.3d at 452. And "courts in this district … have conferred standing to 'groups who, like CREW, engage in a number of … activities—including public education, litigation, administrative proceedings, and legislative reform efforts—where the sought-after information would likely prove useful.'" *CREW v. FEC*, 2023 WL 6141887, at *5 (D.D.C. Sept. 20, 2023); *see also United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity*, 288 F. Supp. 3d 99, 107–08 (D.D.C. 2017) (finding standing to challenge non-disclosure of voting data that would have facilitated nonprofits' advocacy, research, and public education efforts on democracy issues).

Here, the 2023 Act and the Paperwork Reduction Act indisputably require public disclosure of the information that CREW seeks. *See* 2023 Act (codified 31 U.S.C. § 1513 note); *see also* Paperwork Reduction Act, 44 U.S.C. § 3506. Defendants agree, stating that these statutes "require the government's disclosure of information to the public at large." Defs. Opp. 14. Although Defendants note that the statutes "do not require disclosure of information to *CREW*," *id.* (emphasis added), no such individualized entitlement to disclosure is needed. *See Campaign Legal*

*Ctr.*, 31 F.4th at 784 (statute required public disclosure of information on agency's website, not individualized disclosure to the plaintiff); *Env't Def. Fund*, 922 F.3d at 452 (same).

In addition, there is "no reason to doubt," *Campaign Legal Ctr*, 31 F.4th at 783, that the Public Apportionments Database helps CREW monitor and evaluate the Executive Branch's use of congressionally appropriated funds—a core part of CREW's public education, legislative policy, and litigation work. CREW typically accesses apportionment information as soon as it is posted to the database and uses that information to analyze and inform the public about potential misuses of public money. *See* Wentworth Decl. ¶¶ 6–10, 14. And its need to access the database is particularly pressing now, because CREW relies on apportionment data to monitor and inform the public about potential violations of the Impoundment Control Act and DOGE's activities—two matters of ongoing national concern. *See id.* ¶¶ 10–22. CREW specifically uses the apportionment information to monitor potentially improper fund withholdings, to identify potential abuses of apportionments, and to submit records requests under the Freedom of Information Act (FOIA) for additional information. *Id.* ¶¶ 6–10, 16, 18, 20–21.

Moreover, by being deprived of the apportionment information, CREW is "suffer[ing] … the type of harm Congress sought to prevent by requiring disclosure," *Friends of Animals*, 828 F.3d at 992—that is, to ensure that members of the public, including CREW, would not be kept in the dark about government spending decisions. Defendants' suggestion that CREW's interest in "act[ing] as a government watchdog" is not an interest that Congress sought to serve because it "is distinct from providing the public with the apportionment materials directly" is meritless. Defs. Opp. 15. CREW, like any other member of the public, has a statutory entitlement to the information. And that CREW disseminates information to the public as part of its advocacy work in monitoring government spending reinforces the concrete and particularized nature of the harm

it faces. *See Friends of Animals v. Salazar*, 626 F. Supp. 2d 102, 111 (D.D.C. 2009) (stating that "[a]llegations of injury to an organization's ability to disseminate information may be deemed sufficiently particular for standing purposes where that information is essential to the injured organization's activities." (quoting *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 122 (D.C. Cir. 1990)).

**B.** Citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021), Defendants assert that CREW must show "downstream consequences" from the deprivation of information. *TransUnion*, however, specifically noted that the "case does not involve … a public-disclosure law." 594 U.S. at 441. And it distinguished *Akins* and *Public Citizen*, stating that "those cases involved denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information." *Id.* Defendants' reliance on *TransUnion* is thus misplaced here, where CREW has suffered an informational injury based on its denial of access to information to which it is entitled under a public disclosure law, the 2023 Act.

Defendants also assert that CREW's injury is a "generalized grievance" suffered by "all members of the public." Defs. Opp. 11 (quotation marks omitted). But "the fact that a number of people could be similarly injured does not render the claim an impermissible generalized grievance: 'where a harm is concrete, though widely shared, the Court has found injury in fact.'" *Pub. Citizen, Inc. v. NHTSA*, 489 F.3d 1279, 1292–93 (D.C. Cir. 2007) (quoting *Akins*, 524 U.S. at 24); *see Pub. Citizen*, 491 U.S. at 449–50 (stating that "[t]he fact that other citizens or groups of citizens" are also deprived of the information "does not lessen [the plaintiffs'] asserted injury, any more than the fact that numerous citizens might request the same information under the Freedom of Information Act entails that those who have been denied access do not possess a sufficient basis to sue"); *Campaign Legal Ctr.*, 31 F.4th at 789 (similar). Thus, "[p]lainly, the

[statute] entitles the public generally to the disclosure, but that does not mean that the informational injury in this case is not particular to Plaintiff." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017).

Moreover, if taken seriously, Defendants' position that the deprivation of information required to be publicly disclosed is not a cognizable injury would call into question plaintiffs' standing to challenge the denial of information under a number of statutes. For example, FOIA, 5 U.S.C. § 552, grants any person the right to obtain records from federal agencies. The Federal Advisory Committee Act (FACA), 5 U.S.C. § 1001 et seq., creates similar rights of access to information from committees that advise agencies. The Government in the Sunshine Act, 5 U.S.C. § 552b, provides a right of access to agency proceedings, and the Federal Election Campaign Act (FECA), 52 U.S.C. § 30101 et seq., imposes reporting and disclosure requirements to provide information to members of the public about sources of campaign funds tapped by candidates for federal office, political parties, and political committees. Other statutes require employers to post notices providing a variety of information to employees,[1] retirement plans to convey information to beneficiaries,[2] corporations to report information to shareholders,[3] and companies to provide information about their use of toxic chemicals for the benefit of surrounding communities.[4]

Finally, Defendants' cursory suggestion that CREW is not injured because it has "an alternative source" for obtaining the information within the Public Apportionments Database is

---

[1]    *See* https://www.dol.gov/general/topics/posters (describing workplace posting requirements of various federal statutes).

[2] *See, e.g.*, 29 U.S.C. §§ 1024(b) & 1025(a) (ERISA provisions requiring reporting of plan and benefit information to plan participants).

[3] *See, e.g.*, 15 U.S.C. § 78n(c).

[4] *See, e.g.*, Emergency Planning & Community Right-to-Know Act, 42 U.S.C. § 11001 et seq. (requiring companies to report inventories and releases of toxic chemicals and to provide public access to material safety data sheets, and authorizing citizen suits to compel compliance).

wrong. Defs. Opp. 12. The information is not available on any other public government website. Wentworth Decl. ¶¶ 9, 26; *see also* Defs. Counter-Statement of Material Facts (SOMF) at 5, ECF No. 18-2. And requesting the information under FOIA—then receiving it a year later,[5] potentially with redactions based on asserted FOIA exemptions—is in no way an adequate substitute for the prompt and unqualified disclosure required by the 2023 Act. Indeed, Congress passed the Consolidated Appropriations Act, 2022 (codified at 31 U.S.C. § 1513 note) (2022 Act) and the 2023 Act despite the existence of FOIA, reflecting the need for this independent statutory right to timely access apportionment information within two business days.

## II. Defendants' removal of the Public Apportionments Database is unlawful.

### A. Defendants' removal of the database violates the 2023 Act.

Defendants do not dispute that their removal of the Public Apportionments Database is contrary to the 2023 Act. They agree that they removed public access to the database as of March 24, 2025. Defs. SOMF at 4. And they agree that the 2023 Act required OMB to provide public access to such a database with apportionment information—specifically, "OMB's documents apportioning appropriations, associated footnotes, and written explanations for the associated footnotes, not later than 2 business days after the date of approval of the apportionment." *Id.* at 2; *see* Defs. Opp. 15–16 (citing 31 U.S.C. § 1513 note).

While Defendants concede their violation of a statute duly enacted by Congress and signed by the President, they assert that they are not required to follow that law. This remarkable assertion is based on their contentions that the 2023 Act is an "impermissible Congressional intrusion into

---

[5] *See* OMB, *Annual Freedom of Information Act Report for Fiscal Year 2023* at 13, https://www.whitehouse.gov/wp-content/uploads/2024/01/Annual-FOIA-Report-for-Fiscal-Year-2023.pdf (reporting that, for granted simple requests, average time for disclosing information is close to one year).

Executive functions." Defs. Opp. 16. Their attempt to place the Executive Branch above the law, however, cannot be reconciled with the basic principle of separation of powers at the foundation of our constitutional system. Defendants also contend that the deliberative process privilege "foreclose[s]" the requirements of the 2023 Act. *Id.* at 22. The statute, however, does not except deliberative material, and, moreover, the apportionment information here is not deliberative.

**1.** The Framers of the Constitution "divide[d] the delegated powers of the new federal government into three defined categories, legislative, executive and judicial, to assure, as nearly as possible, that each Branch of government would confine itself to its assigned responsibility." *INS v. Chadha*, 462 U.S. 919, 951 (1983). Thus, the Constitution vests in Congress the exclusive power to make laws. U.S. Const. art. I, § 1. And it requires the Executive to implement those laws. U.S. Const. art. II, § 3 (providing that the President "shall take Care that the Laws be faithfully executed"). "There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998). Accordingly, "it has been the case for centuries that neither the President, nor his executive branch, may unilaterally refuse to carry out a congressional command." *Widakuswara v. Lake*, 2025 WL 945869, at *6 (S.D.N.Y. Mar. 28, 2025); *see Kendall v. U.S. ex rel. Stokes*, 37 U.S. (12 Pet.) 524, 525 (1838) ("To contend that the obligation imposed on the President to see the laws faithfully executed, implies a power to forbid their execution; is a novel construction of the constitution, and entirely inadmissible."); *see also NTEU v. Nixon*, 492 F.2d 587, 604 (D.C. Cir. 1974) (stating that the President may not refrain from executing laws duly enacted by the Congress (citing *Kendall*)).

Here, Defendants are flouting the law because they disagree with the very principle underlying it. Under the Constitution, that disagreement does not provide a basis for Defendants to refuse to follow the law.

Defendants' assertion that the 2023 Act impermissibly intrudes on the Executive's "power of administering [congressionally appropriated] funds," Defs. Opp. 17, is profoundly incorrect. Quite the opposite, one of *Congress's* "most important" powers is its "exclusive power over the purse." *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (citation omitted). And "Congress has plenary power to exact any reporting and accounting it considers appropriate in the public interest." *Harrington v. Bush*, 553 F.2d 190, 195 n.7 (D.C. Cir. 1977). Congress has exercised this plenary power by requiring agencies—including OMB—to publicly disclose how they administer federal funds. *See, e.g.*, Federal Funding Accountability and Transparency Act, Pub. L. 109–282, 120 Stat. 1186 (2006) (requiring OMB to "ensure the existence and operation of a single searchable website, accessible by the public at no cost to access, that includes" information about federal financial assistance and spending); Digital Accountability and Transparency Act of 2014, 31 U.S.C. § 6101 note (requiring additional disclosures on USAspending.gov website). The 2023 Act's requirement of public disclosure of the Executive's apportionment decisions concerning appropriated funds is thus both unexceptional and firmly rooted in Congress's constitutional authority to enact the law, including with respect to appropriations. Defendants' argument therefore gets things backwards: By defying the 2023 Act, it is the *Executive* that is impermissibly intruding on *Congress's* authority.

**2.** As CREW has explained, *see* Pl. Mem. 13–14, Defendants' claim of deliberative process privilege likewise does not justify their refusal to comply with the 2023 Act. To begin with, contrary to Defendants' assertion, Defs. Opp. 18, the deliberative process privilege is not a constitutional one. Rather, it is "primarily a common law privilege." *Protect Democracy Project, Inc. v. NSA*, 10 F.4th 879, 885 (D.C. Cir. 2021). And because "Congress may determine for itself which [common law] privileges the Government may avail itself of and which it may not," the

9

deliberative process privilege can be displaced by a statute enacted by Congress. *U.S. Dep't of Just. v. Julian*, 486 U.S. 1, 13 (1988); *see also* Wright & Miller, 23A Fed. Prac. & Proc. Evid. § 5437 (1st ed. Apr. 2025 update). Here, by requiring public disclosure without any privilege exception, the 2023 Act reflects "a congressional policy choice in favor of disclosure of all information." *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984) (emphasis removed).

In any event, the apportionment information at issue does not fall within the scope of the privilege. The deliberative process privilege "may only be invoked for documents that are both predecisional and deliberative." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021). "A document is predecisional if it was generated before the agency's final decision on the matter, and it is deliberative when it is prepared to help the agency formulate its position, and it reflects the give-and-take of the consultative process." *Id.* (cleaned up). The apportionment documents are neither predecisional nor deliberative because they reflect final decisions approved by OMB that are legally binding. *See* Pl. Mem. 13–14 (collecting citations).

Defendants admit that apportionment decisions are "legally binding upon the Executive Branch officials" and agencies. Defs. SOMF at 2; *see* Defs. Mem. 4, 19. They assert, however, that the apportionment decisions are not "final" because OMB "remains free to change" its decisions. Defs. Opp. 19. A document, however, is a "final" decision outside the scope of the deliberative process privilege if it has "real operative effect"—that is, if it will lead to "direct and appreciable legal consequences." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 271 (2021). Here, the apportionment decisions that must be disclosed under the 2023 Act have real, operative effect under the Anti-Deficiency Act, including the prospect of criminal and administrative penalties. *See* 31 U.S.C. §§ 1517–19. They are "not subject to the privilege, even if [they] may be rendered obsolete by a subsequent pronouncement." *CREW v. USPS*, 557 F. Supp.

3d 145, 157 (D.D.C. 2021) (cleaned up); *see also Sackett v. EPA*, 566 U.S. 120, 127 (2012) ("The mere possibility that an agency might reconsider … does not suffice to make an otherwise final agency action nonfinal"); *Nat'l Env't Dev. Ass'ns Clean Air Project v. EPA*, 752 F.3d 999, 1006 (D.C. Cir. 2014) ("An agency action may be final even if the agency's position is 'subject to change' in the future.").

Finally, Defendants argue that complying with 2022 Act and 2023 Act law has prompted them to omit certain information from apportionment documents, to avoid public disclosure of that information. *See* Defs. Opp. 20–21. *But see* Bagenstos Decl. ¶ 7, ECF No. 9-4. That argument does not advance their invocation of a deliberative process privilege; it is essentially a restatement of their disagreement, on policy grounds, with Congress's determination that the apportionment information should be publicly and promptly disclosed. That policy disagreement does not excuse compliance with the law.

### B.  Defendants violated the Paperwork Reduction Act.

Defendants' removal of the Public Apportionments Database is also unlawful under two provisions of the Paperwork Reduction Act.

First, Defendants' removal of the Public Apportionments Database is contrary to the Paperwork Reduction Act's requirement to provide the public with timely access to the information. *See* 44 U.S.C. § 3506(d)(1); Pl. Mem. 16–17. Defendants do not dispute that the apportionment information in the database is "public information" within the meaning of the Paperwork Reduction Act, and they do not dispute that the information's removal deprives the public of timely access, as required by that statute. Defendants respond only that the apportionment documents are exempt from disclosure under the deliberative process privilege. *See* Defs. Opp. 23. That assertion, however, fails for the reasons discussed above.

Second, Defendants' removal of the database is contrary to the Paperwork Reduction Act's requirement to "provide adequate notice when initiating, substantially modifying, or terminating significant information dissemination products." 44 U.S.C. § 3506(d)(3). Defendants do not dispute that the Public Apportionments Database is a "significant information dissemination product[]" within the meaning of the statute, and they admit that they provided "no notice or explanation to the public prior to their removal of the Public Apportionments Database," Defs. SOMF at 4. Defendants assert, though, that their "failure to provide advance notice … was harmless error" because they sent a letter to two Congressmembers five days after they removed the database. Defs. Opp. 23. The Paperwork Reduction Act's notice requirement, however, has no harmless error exception. And the lack of notice was not, in any event, "harmless" because it prevented CREW and other members of the public from engaging in advocacy to prevent the takedown. Moreover, a letter sent to two Congressmembers five days *after* their action is not "advance notice" to the public.

## III.    If the Court does not enter partial summary judgment for CREW, a preliminary injunction is warranted.

Because the merits of CREW's challenge are clear and involve no disputed facts, this Court should grant partial summary judgment on CREW's APA claims for violation of the 2023 Act and Paperwork Reduction Act. If, however, the Court concludes that partial summary judgment is premature, it should enter a preliminary injunction requiring restoration of the Public Apportionments Database while this litigation proceeds because CREW is correct on the merits, CREW is suffering ongoing and irreparable injury, and the balance of the equities and public interest strongly weigh in CREW's favor.

**A. CREW is suffering ongoing irreparable harm.**

CREW is suffering, and will continue to suffer, irreparable informational injury from Defendants' removal of public access to the Public Apportionments Database. "[A]n informational injury can 'be sufficient to establish irreparable harm if the information sought is time-sensitive.'" *Drs. for Am. v. OPM*, -- F. Supp. 3d ---, 2025 WL 452707, at *9 (D.D.C. Feb. 11, 2025) (quoting *Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10 (D.D.C. 2014)); *see CREW v. U.S. DOGE Serv.*, -- F. Supp. 3d ---, 2025 WL 752367, at *14 (D.D.C. Mar. 10, 2025) ("*Timely* awareness is … necessary because 'stale information is of little value.'" (quoting *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988))).

As CREW has explained, *see* Pl. Mem. 19–21, it urgently needs the apportionment information for its work monitoring, disseminating information, and conducting advocacy on ongoing and highly public issues involving government spending. For example, CREW uses the apportionment information in the database to analyze and disseminate information about how "DOGE" is funded and potential impoundments issues. *See* Wentworth Decl. ¶¶ 6–10, 18, 20. These harms are not to the public at large, as Defendants assert, *see* Defs. Opp. 23–24, but rather harms to CREW, whose work is impeded without timely access to this information.

Defendants' reliance on *CREW v. US. DOGE Service* is misplaced. In that FOIA case, although the court stated that the plaintiff had not established irreparable harm to compel disclosure of records by a date certain, *see id.* at *10, it also separately ruled that the plaintiff *had* shown irreparable harm based on the "delay in processing its [FOIA] request on an expedited basis," 2025 WL 752367 at *14. In granting a preliminary injunction on that claim, the court explained that "[i]f [it] does not grant preliminary relief to CREW, records responsive to the [FOIA] request will not be released anytime soon, if ever," and with that delay, the "information may indeed be 'stale,' or at least, significantly less useful than it once was." *Id.* Similarly, here,

because Defendants have refused to disclose the apportionment information at all, the denial of the information is causing CREW irreparable harm because, if released only at the conclusion of this litigation, the information will be stale and significantly less useful than if it had been timely disclosed. *See* Wentworth Decl. ¶¶ 8–9, 14–15. For example, because many appropriated funds are available for only a limited period of time, the denial of access within that time period to apportionment information for those funds impedes CREW's ability to monitor and analyze potential impoundment in a timely manner. *See id.* ¶ 8.

Defendants do not dispute that irreparable harm can result from obstacles to an organization's fulfilment of its mission. *See* Defs. Opp. 24 (citing *League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016)). Rather, they assert that CREW has not made that showing here because, according to Defendants, the information is accessible through other sources. As CREW has explained, however, the Public Apportionments Database is the *only* publicly accessible government source for OMB's apportionment information. *See* Wentworth Decl. ¶¶ 9, 26. None of Defendants' proposed alternatives for accessing apportionment information—through FOIA requests, congressional reports on spending, or other agency reports—provides access to the same information that was in the Public Apportionments Database, let alone on the same timeframe. For example, FOIA permits an agency to redact information based on its assertion of FOIA exemptions, and it does not require disclosure within two business days. And the OMB SF-133 reports and the Treasury report that Defendants cite, *see* Defs. Opp. 25, do not include information on each approved apportionment, including the footnotes showing restrictions or conditions imposed by OMB, and also do not require disclosure within two business days. *See generally MAX Information and Reports (Executive, Legislative, and Judicial Users): FY 2025 -*

*SF 133 Reports on Budget Execution and Budgetary Resources* (collecting reports);[6] U.S. Dep't of the Treasury, *Financial Report of the United States Government: Fiscal Year 2024*;[7] *see also* 31 U.S.C. § 331(e)(1) (requiring an "annual" Treasury report with the "overall financial position" for the Executive Branch). Thus, none of the sources that Defendants cite is a substitute for the public disclosure required by the 2023 Act.

Without timely access to the Public Apportionments Database, as required by the 2023 Act, CREW is impeded in its ability to monitor, advocate on, and disseminate information about government spending issues and promote government transparency and accountability. That work is not limited to monitoring apportionments to DOGE, as Defendants suggest; rather, CREW needs access to *all* apportionment data. *See* Wentworth Decl. ¶¶ 6–10, 14–16, 27.

**B.  The balance of the equities supports a preliminary injunction.**

As CREW has explained, *see* Pl. Mem. 21–25, the balance of the equities and the public interest weigh decisively in favor of granting a preliminary injunction. The government "cannot suffer harm from an injunction that merely ends an unlawful practice," *Open Cmtys. Alliance v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017) (citation omitted), and Defendants have not offered evidence, or even suggested, that the government suffered harm from complying with the law for approximately three years. *See* Defs. SOMF at 3–4 (agreeing that Defendants complied with the requirements for approximately three years). On the public interest side of the balance, restoring immediate access to the information would significantly serve the public interest by

---

[6]        https://portal.max.gov/portal/document/SF133/Budget/FACTS%20II%20-%20SF%20133%20Report%20on%20Budget%20Execution%20and%20Budgetary%20Resources.html.

[7]        https://www.fiscal.treasury.gov/files/reports-statements/financial-report/2024/01-16-2025-FR-(Final).pdf.

providing transparency into government funding decisions, allowing the public and Congress to hold the government accountable for potential misuses of taxpayer funds. *See* Pls. Mem. 22–25.

On this prong, Defendants argue only that an injunction requiring them to comply with the law would result in an "unconstitutional infringement upon Executive power." Defs. Opp. 26. As explained above, *supra* II.A.1., that argument is wholly without merit.

## IV.    A security bond would be inappropriate in this case.

Defendants briefly suggest that, if the Court issues a preliminary injunction, it should require CREW to post security under Federal Rule of Civil Procedure 65(c). The Court should deny that request. Rule 65(c) "vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond," *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999), "including the discretion to require no bond at all," *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020).

Here, where CREW's claims do not seek the expenditure of money or monetary damages, and the balance of equities strongly favors CREW, a bond would not be appropriate. *See Nat'l Council of Nonprofits v. OMB*, -- F. Supp. 3d. ---, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) (denying request for injunction bond); *Pacito v. Trump*, -- F. Supp. 3d. ---, 2025 WL 893530, at *14 (W.D. Wash. Mar. 24, 2025) (denying injunction bond in a case involving expenditure of money); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, -- F. Supp. 3d ---, 2025 WL 573764, at *29 (D. Md. Feb. 21, 2025) (setting a nominal bond of zero dollars because granting the defendants' request "would essentially forestall [the] [p]laintiffs' access to judicial review").

## CONCLUSION

The Court should grant CREW's motion and enter partial summary judgment or, in the alternative, a preliminary injunction in favor of CREW.

16

Dated: May 4, 2025

Respectfully submitted,

/s/ *Wendy Liu*

Wendy Liu (DC Bar No. 1600942)
Adina H. Rosenbaum (DC Bar No. 490928)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
wliu@citizen.org

Nikhel S. Sus (DC Bar No. 1017937)
Yoseph T. Desta (DC Bar No. 90002042)*
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
(202) 408-5565
nsus@citizensforethics.org
ydesta@citizensforethics.org

*admitted *pro hac vice*

*Counsel for Plaintiff*

17