# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, )<br><br>Plaintiff, )<br><br>v. )<br><br>OFFICE OF MANAGEMENT AND BUDGET, et al., )<br><br>Defendants. ) | Case No. 1:25-cv-01051-EGS |

**DEFENDANTS' SUR-REPLY TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND FOR A PARTIAL MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

CREW's request for preliminary injunction and partial summary judgment fails. First, CREW's Reply re-enforces that it has no sufficiently particularized injury. CREW's attempt to redress a generalized statutory violation without any tether to an actual injury in fact runs afoul of Article III's standing requirements. Second, CREW cannot enforce unconstitutional statutory provisions that require the Executive's disclosure of predecisional, deliberative information. The apportionment information CREW seeks contains OMB's interim allocation of budgetary resources based on evolving policy considerations. Forcing OMB's disclosure of such deliberations constitutes an improper infringement on Executive power. Finally, because CREW cannot identify any imminent irreparable injury, it cannot establish entitlement to any preliminary relief. The Court should, therefore, deny CREW's motion in its entirety.

**ARGUMENT**

**I.     CREW Has Failed To Establish Injury In Fact.**

CREW claims that its inability to access the apportionment database constitutes an injury in fact as a matter of law because the 2022 and 2023 Acts require disclosure of apportionment information. Reply at 2–3. CREW argues that because it has been denied access to information that the Acts require OMB disclose, for purposes of informational standing, it does not need to allege any additional harm to establish an injury in fact. *Id.* at 2.

CREW's suggestion that a plaintiff may establish an informational injury without showing a concrete and particularized injury beyond a mere statutory violation defies Article III. First, CREW's reliance on *Akins*, *Public Citizen*, and *Campaign Legal Center* is misplaced because in each of those cases the plaintiffs requested and were denied specific records under a public disclosure statute. *See Fed. Election Com'n v. Akins*, 524 U.S. 11 (1998) (FECA); *Pub.*

1

*Citizen v. DOJ*, 491 U.S. 440 (1989) (FACA); *Campaign Legal Ctr. v. Fed. Election Comm'n*, 31 F.4th 781 (D.C. Cir. 2022) (FACA). As those cases recognize, an informational injury is concrete and particularized if a plaintiff shows that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, *and* (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (emphasis added). In those cases, unlike here, the plaintiffs satisfied the second prong because they were denied access to specific, requested documents. Here, in contrast, there are no allegations of a request or denial of apportionment documents to support a particularized injury. Moreover, the 2022 and 2023 Acts were passed to facilitate Legislative oversight of Executive spending, not to facilitate a watchdog's attempts to report on government spending. Simply put, any harm CREW may claim regarding its inability to report on OMB's apportionments is not the type of harm Congress sought to prevent by requiring disclosure of apportionment documents.

Second, in claiming informational injury, CREW relies on cases involving statutes in which Congress expressly provided a private cause of action to redress non-disclosure of information to the public. *See Campaign Legal Ctr. & Democracy 21 v. Fed. Election Comm'n*, 952 F.3d 352, 354 (D.C. Cir. 2020) ("FECA provides a cause of action for any party aggrieved."); *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, No. 22-CV-3281 (CRC), 2023 WL 6141887, at *4–5 (D.D.C. Sept. 20, 2023) (discussing standing under the FECA statutory scheme); *Envtl. Def. Fund v. Envtl. Prot. Agency*, 922 F.3d 446, 452 (D.C. Cir. 2019) (discussing standing under the Toxic Substances Control Act, which contains a citizens' suit provision); *Jewell*, 824 F.3d at 1040 (analyzing standing under the Endangered Species Act, which contains a citizens' suit provision). While the plaintiffs in these cases still

had to show an injury-in-fact to establish their standing, in passing these statutes, Congress explicitly contemplated private redress for an agency's non-compliance with statutory provisions and created an informational right. "Deprivation of this right to information that should be disclosed under [the statute], therefore, inflicts an injury in fact when the plaintiff fails to obtain information which must be publicly disclosed pursuant to the statute." *CREW v. FEC*, 2023 WL 6141887, at *5. In contrast here, the 2022 and 2023 Acts do not provide a private cause of action for OMB's non-compliance with disclosure provisions. As a result, CREW cannot rely on a right to information and a deprivation of that right for its standing. Instead, CREW is required to show that it has suffered a concrete and particularized injury stemming from OMB's non-disclosure of apportionment documents.

## II.     The 2022 And 2023 Act Are Unconstitutional.

CREW claims that Congress has "plenary power" to require agencies to "publicly disclose how they administer federal funds." Reply at 9. But once Congress appropriates funds to the Executive Branch, "its participation ends" and "can thereafter control the execution of its enactment only indirectly—by passing new legislation." *Bowsher v. Synar*, 478 U.S. 714, 733–34 (1986). Congress cannot maintain an "active role" in its "supervision" of Executive officers. *Id.* at 722. Doing so amounts to an unconstitutional impairment of Executive functions. *See Mistretta v. United States*, 488 U.S. 361, 397–08 (1989). The 2022 and 2023 Acts, therefore, call for unconstitutional infringement upon Executive power.

Moreover, Congress cannot as CREW suggests, Reply at 10, eliminate privileges that are grounded in the separation of powers. *See Comm. on Oversight & Gov't Reform v. Holder*, No. CV 12-1332 (ABJ), 2014 WL 12662665, at *1 (D.D.C. Aug. 20, 2014), *modified*, No. CV 12-1332 (ABJ), 2014 WL 12662666 (D.D.C. Sept. 9, 2014) (noting that the deliberative process

3

privilege as a constitutional doctrine is rooted in separation of powers). The common law deliberative process privilege protects the Executive from being "forced to operate in a fishbowl." *EPA v. Mink*, 410 U.S. 73, 87 (1973); *see Comm. on Oversight & Gov't Reform, United States House of Representatives v. Sessions*, 344 F. Supp. 3d 1, 15 (D.D.C. 2018) (noting that "the executive branch could invoke the deliberative process prong of the executive privilege to shield records from production to the legislature"). The privilege shields predecisional and deliberative documents that are "part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (quotation marks omitted).

Here, the apportionment documents are predecisional and deliberative because—unlike CREW suggests, Reply at 10—they are merely OMB's interim allocation of funds and are subject to ongoing policy considerations with agency partners. Apportionments reflect OMB's initial distribution of appropriated funds based on the Executive's discrete assessment of priorities and goals. Upon issuance, OMB engages with agencies to understand their needs and circumstances and OMB adjusts its initial consideration based on changing circumstances and desired policy outcomes. Disclosure of apportionment documents not only forces the Executive to disclose its un-settled policy considerations, but also reveals the deliberations with subordinate agency officials to effectuate desired agenda outcomes. While Congress and the public may be entitled to information regarding how agency funds are ultimately obligated for expenditure, they are not entitled to predecisional and deliberative information that infringes upon the Executive's ability to apportion funds as he "considers appropriate." 31 U.S.C. § 1512(b)(2).

### III. CREW Cannot Establish Irreparable Harm.

It is clear that CREW will not suffer any irreparable harm in the absence of a preliminary injunction. CREW claims that it requires apportionment documents on a preliminary basis to analyze and disseminate information about how DOGE is funded and about any potential impoundment issues. *See* Reply at 13. While CREW generally claims that it has been impeded from reporting on apportionments during the period when they may be available for obligation, Reply at 14, it has not identified any impending events that would necessitate preliminary relief at this juncture. CREW's overarching demand for all apportionment documents is not sufficiently tailored to address any harm that CREW may be enduring at this instant. CREW's failure to identify any imminent, irreparable harm is dispositive. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).

### CONCLUSION

For all the foregoing reasons, and the reasons set forth in Defendants' Opposition, the Court should deny CREW's motion for a preliminary injunction and for partial summary judgment.

Dated: May 5, 2025

        Respectfully submitted,

        YAAKOV M. ROTH
        Acting Assistant Attorney General

        MARCIA BERMAN
        Assistant Branch Director

        */s/ Heidy L. Gonzalez*
        HEIDY L. GONZALEZ
        (FL Bar #1025003)
        CARMEN M. BANERJEE
        (D.C. Bar #497678)
        Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 598-7409
Email: heidy.gonzalez@usdoj.gov

*Attorneys for Defendants*